OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, the Cincinnati Insurance Company, appeals the decision of the Mahoning County Court of Common Pleas that denied Cincinnati's motion for summary judgment and declared that Cincinnati had the duty to indemnify and defend its insured, DefendantA-ppellee, Fab Art, Inc., for the employer intentional tort claim brought by PlaintiffA-ppellee, Kimberly Schwerha. Cincinnati is correct.
 {¶ 2} Fab Art's umbrella policy with Cincinnati excludes injuries arising out of and in the course of employment with Fab Art unless an underlying policy provides coverage for all injuries arising out of and in the course of employment. The insurance provided by the underlying policies do not cover all injuries arising out of and in the course of employment. Thus, the umbrella policy does not cover Schwerha's claim against Fab Art.
 {¶ 3} The trial court's decision is reversed and its judgment is modified. Cincinnati has no duty to defend Fab Art against or indemnify Fab Art for Schwerha's claim for an employer intentional tort.
 Facts {¶ 4} On January 10, 2000, David Schwerha was working for Fab Art when a gearbox he was welding broke free, fell, and killed him. His wife, Kimberly, was appointed the administrator of his estate and filed a wrongful death action against Fab Art based on a theory that it committed an employer intentional tort against him. Fab Art was insured by Cincinnati under both a commercial general liability policy and an umbrella policy and Cincinnati agreed to defend Fab Art under a reservation of rights.
 {¶ 5} Cincinnati later filed a complaint for declaratory judgment against Fab Art and Schwerha, contending it had no duty to indemnify or defend Fab Art from Schwerha's action. That action was then consolidated with Schwerha's suit. Cincinnati moved for summary judgment, arguing it had no duty to indemnify or defend Fab Art under either the commercial general liability policy or the umbrella policy. Schwerha and Fab Art both responded, arguing that the umbrella policy provided coverage. The trial court overruled Cincinnati's motion for summary judgment and declared Cincinnati had a duty to defend and indemnify Fab Art against Schwerha's intentional tort claim.
 Standard of Review {¶ 6} In its first of two assignments of error, Cincinnati argues:
 {¶ 7} "The trial court erred in overruling Defendant-Appellant The Cincinnati Insurance Company's Motion for Summary Judgment because Cincinnati has no duty to defend or indemnify Defendant-Appellee Fab Art, Inc. against Plaintiff-Appellee Schwerha's tort action. The plain terms of the insurance policy Fab Art purchased from Cincinnati expressly exclude such duties. The Ohio Supreme Court ruled against coverage on the same commercial general liability policy in PennTraffic Co. v. AIU Ins. Co. (2003), 99 Ohio St.3d 227, N.E.2d 1199 [sic], the controlling law in this matter."
 {¶ 8} When reviewing a trial court's decision to grant summary judgment, we apply the same standard as the trial court and, therefore, engage in a de novo review. Parenti v. GoodyearTire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer,90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 9} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresherv. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 {¶ 10} Furthermore, the parties' dispute presents this court with a question of contract interpretation. A court's role when asked to interpret a contract is to give effect to the intent of the parties to the agreement. Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11. The parties' intent resides in the language they chose to employ in the agreement, and when that language is clear, a court may look no further to find the intent of the parties. Id. The words and phrases the parties use in an insurance contract must be given their natural and commonly accepted meaning. Tomlinson v. Skolnik (1989),44 Ohio St.3d 11, 12. Courts then look to the plain and ordinary meaning of those words and phrases unless another meaning is clearly apparent from the contents of the policy. Galatis at ¶ 11. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id. When contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent that is not expressed in the clear language used by the parties. Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 246. However, ambiguities in insurance policies should be construed liberally in favor of coverage. Yeager v. Pacific Mut. Life Ins. Co. (1956),166 Ohio St. 71, paragraph one of the syllabus.
 Admissibility of Exhibits {¶ 11} In support of its first assignment of error, Cincinnati relies upon a variety of exhibits. Both Schwerha and Fab Art claim that Cincinnati cannot rely on these exhibits since they did not comply with Civ.R. 56(C) and were properly objected to in the trial court. Cincinnati does not seriously challenge this argument on appeal. Instead, it contends that it should prevail on appeal even if those exhibits are stricken since they were only provided for two reasons: 1) to show the historical context for the policies at issue in this case and 2) to show that Fab Art had refused to purchase insurance from Cincinnati which specifically covered employer intentional torts.
 {¶ 12} Under Civ.R. 56(C), a court faced with a motion for summary judgment must only consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action." Stateex rel. The V Cos. v. Marshall, 81 Ohio St.3d 467, 473, 1998-Ohio-0329. "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)." Skidmore Assoc. Co. v. Southerland
(1993), 89 Ohio App.3d 177, 179. A court may consider evidence other than that specifically listed in Civ.R. 56 only when there is no objection to that evidence. Marshall at 473.
 {¶ 13} In this case, both Schwerha and Fab Art objected to six exhibits which Cincinnati attached to its motion for summary judgment: 1) Exhibit E — Fab Art's commercial umbrella liability policy with Cincinnati; 2) Exhibit F — an employers liability coverage form for Ohio; 3) Exhibit G — a reservation of rights letter from Cincinnati to Dan Tufaro, one of Fab Art's employees; 4) Exhibit K — a 1982 letter from Cincinnati to its Ohio agents describing the need to inform its clients that they may need employer intentional tort coverage; 5) Exhibit L — a 1987 letter from Cincinnati to its agents stating that recent legislation negated the need for employer intentional tort coverage; and 6) Exhibit M — a 1994 letter from Cincinnati to its agents stating that they once again had to offer employer intentional tort coverage. None of these exhibits are of the kind described in Civ.R. 56(C) and they were not incorporated by reference into an affidavit as described by Civ.R. 56(E). Thus, the trial court could not consider these exhibits when ruling on Cincinnati's motion for summary judgment and we cannot consider them on appeal.
 Coverage {¶ 14} In this case, the fundamental question the parties present is whether any of Fab Art's three policies with Cincinnati, a commercial general liability policy (CGL), an enhancement to the CGL, and an umbrella policy, cover Schwerha's claim for a substantial certainty intentional tort. After the parties began their litigation, the Ohio Supreme Court decided a case directly bearing on that issue.
 {¶ 15} In Penn Traffic Co. v. AIU Ins. Co.,99 Ohio St.3d 227, 2003-Ohio-3373, the issue was whether an insurance policy issued by Cincinnati covered an employer intentional tort. Cincinnati had issued a CGL with an enhancement to its insured, Penn Traffic. One of Penn Traffic's employees was awarded a judgment against Penn Traffic for an employer intentional tort claim and Cincinnati refused to indemnify Penn Traffic or pay for the judgment. Penn Traffic then filed an action seeking a declaratory judgment.
 {¶ 16} The Ohio Supreme Court described the policy at issue in Penn Traffic as follows:
 {¶ 17} "Under Section 1(A)(1)(a) of the CGL policy for the period March 1, 1995, through March 1, 1998, CIC agreed to pay `those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.' Section 1(A)(1)(b)(1) provided coverage for bodily injury and property damage `only if' it is `caused byan "occurrence."' (Emphasis added.) The policy defined `occurrence' as `an accident, including continuous or repeatedexposure to substantially the same general harmful conditions.' (Emphasis added.) The policy did not define the word `accident.'
 {¶ 18} "The CGL policy expressly excluded coverage for bodily injury that is `expected or intended from the standpoint of theinsured' and bodily injury to `[a]n employee of the insuredarising out of and in the course of employment by the insured.' (Emphasis added.)
 {¶ 19} "The Ohio Liability Coverage Enhancement Endorsement modified the insurance provided under the CGL. The enhancement provided additional Ohio liability coverage as follows:
 "`COVERAGE D — OHIO LIABILITY COVERAGE {¶ 20} "`1. Insuring Agreement.
 {¶ 21} "`We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" sustained by any employee of the insured arising out of or in the course of his or her employment by the insured, provided the employee is reported and declared under the Workers' Compensation Fund of the State of Ohio. * * * The "bodily injury" must be caused by an "occurrence."'
 {¶ 22} The enhancement excludes coverage for:
 {¶ 23} "`h. "bodily injury" expected or intended from the standpoint of the insured. This exclusion includes but is not limited to:
 {¶ 24} "`(1) any liability for acts committed by or at the direction of an insured with the deliberate intent to injure; and
 {¶ 25} "`(2) any liability for acts committed by or at the direction of an insured in which the act is substantially certain to cause "bodily injury." For purposes of this insurance, an act is substantially certain to cause "bodily injury" when all three of the following conditions are met:
 {¶ 26} "`(a) an insured knows of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 {¶ 27} "`(b) an insured knows that if an employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be substantially certain; and
 {¶ 28} "`(c) an insured under such circumstances and with such knowledge, does act to require the employee to continue to perform the dangerous task.'" Id. at ¶ 17-29.
 {¶ 29} The Ohio Supreme Court found that neither the CGL nor the enhancement provided coverage for an employer intentional tort. The enhancement specifically excluded two kinds of intentional torts, those directly intended and those where intent is inferred. Id. at ¶ 34. Furthermore, the CGL excluded bodily injuries "arising out of and in the course of employment." The Ohio Supreme Court held "that a CGL insurance policy that contains an exclusion from coverage for bodily injury to an employee arising out of or in the course of employment does not provide coverage for an employer's liability for substantial-certainty intentional torts." Id. at ¶ 42.
 {¶ 30} The relevant portions of the CGL and enhancement at issue in this case are identical to the quoted portions of the respective policies in Penn Traffic. Thus, neither the CGL or enhancement policies which Cincinnati issued to Fab Art provide coverage for Schwerha's claims against Fab Art. The only distinction between this case and Penn Traffic is the existence of the umbrella policy.
 {¶ 31} The umbrella policy in this case excludes injuries to an employee "arising out of or in the course of employment by the insured or performing duties related to the conduct of the insured's business," language which is identical to the language discussed in Penn Traffic. However, this exclusion, by its own terms, does not apply in all situations.
 {¶ 32} "This exclusion does not apply when such insurance is provided by a valid and collectible policy listed in the Schedule of Underlying Policies, or would have been provided by such listed policy except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such `underlying insurance'." Umbrella Policy Section I(B)(7).
 {¶ 33} Accordingly, Schwerha's claim against Fab Art is not covered by the umbrella policy unless either the CGL or enhancement, the two underlying policies, provides insurance covering injuries arising out of the course of employment.
 {¶ 34} Section I(2)(e)(1)(a) of the CGL specifically excludes injuries arising out of and in the course and scope of employment. Therefore, it does not provide the type of insurance discussed in Section I(B)(7) of the umbrella policy.
 {¶ 35} Schwerha and Fab Art argue that the enhancement only excludes some torts which occur in the course of employment, not all torts occurring in the course of employment. They maintain that this distinction means that the enhancement provides insurance for some of the injuries described in Section I(B)(7), so this exclusion in the umbrella policy does not apply. This argument ignores the language in Section I(B)(7).
 {¶ 36} Pursuant to Section I(B)(7), the umbrella policy covers all injuries to employees arising in the course of employment if an underlying contract provides such coverage. Any policy which does not provide coverage for all injuries to employees arising in the course of employment does not provide the coverage discussed in the exclusion. Thus, an underlying policy which covers some, but not all, torts occurring in the course of employment does not affect Section I(B)(7)'s applicability to a particular claim.
 {¶ 37} The enhancement in this case clearly does not cover all injuries to employees arising out of the course of their employment. For instance, it only covers injuries which have been "reported and declared under the Workers' Compensation Fund of the State of Ohio." It also excludes contractual liability, punitive damages, injuries arising from the discharge of pollutants, and bodily injuries arising from substantial certainty intentional torts. Since the enhancement does not provide coverage for all injuries to employees arising out of the course of employment, it does not provide the type of insurance described in Section I(B)(7).
 {¶ 38} Since neither the CGL or its enhancement provide the insurance discussed in Section I(B)(7), that exclusion is a valid, enforceable part of the policy which excludes coverage for the claim Schwerha is bringing against Fab Art. Cincinnati's first assignment of error is meritorious.
 Distinct Issue {¶ 39} In its second assignment of error, Cincinnati argues:
 {¶ 40} "The trial court erred in overruling Cincinnati's Motion for Summary Judgment because Cincinnati's declaratory judgment action (Mahoning County Court of Common Pleas Case No. 02 CV 4086) poses a distinct issue from Plaintiff-Appellee Schwerha's tort action against Defendant-Appellant (Mahoning County Court of Common Pleas Case No. 00 CV 3075)."
 {¶ 41} In its brief, Cincinnati never makes any argument in support of this assignment of error. App.R. 16(A)(7) requires that an appellant support an assignment of error with "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) allows this court to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
 {¶ 42} In accordance with App.R. 16(A), we will disregard this assignment of error because Cincinnati has failed to present any kind of argument supporting it.
 Conclusion {¶ 43} The trial court found that Cincinnati's umbrella policy covered Schwerha's employer intentional tort claim against Fab Art. However, the umbrella policy excludes coverage for all injuries arising in the course of employment unless an underlying policy provides this coverage. Neither of the underlying policies provides that coverage, therefore, the umbrella policy does not either.
 {¶ 44} Accordingly, the judgment of the trial court is reversed and modified. Cincinnati has no duty to defend Fab Art against or indemnify Fab Art for Schwerha's claim for an employer intentional tort.
Donofrio, P.J., concurs.
Vukovich, J., concurs.