The STATE of Ohio, Appellee,

v.

KELLEY, Appellant.

[Cite as *State v. Kelley*, 179 Ohio App.3d 666, 2008-Ohio-6598.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 08 JE 4.

Decided Dec. 10, 2008.

Thomas Straus, Jefferson County Prosecuting Attorney, and Jane Hanlin, Assistant Prosecuting Attorney, for appellee.

Geoffrey Damon, for appellant.

---

VUKOVICH, Judge.

{¶ 1} Defendant-appellant, Dawn Kelley, appeals from the jury verdict rendered in the Jefferson County Common Pleas Court finding her guilty of trafficking cocaine, possession of cocaine, and possession of drug paraphernalia. Kelly raises numerous issues in this appeal. She argues that her Sixth Amendment constitutional right to confrontation was violated in two respects. First, she contends that it was error for the trial court to deny disclosure of the identity of the confidential informant at trial. Second, she argues that it was prejudicial for the audio tape of the controlled buy to be played at trial when the confidential informant did not testify. Additionally, she asserts that the convictions were not supported by sufficient evidence and that the convictions were against the manifest weight of the evidence. Kelley also raises ineffective-assistance-of-counsel arguments concerning trial counsel's failure to object to the admission and playing of the tape of the controlled buy and failure to file a suppression motion. Lastly, she argues that the prosecutor's closing argument contained a prejudicial statement. For the reasons provided below, the judgment of the trial court is affirmed.

## STATEMENT OF CASE

{¶ 2} On December 22, 2004, the Steubenville Police Department used a wired confidential informant to buy crack cocaine from Kelley at her house on 112 McDowell Avenue, Steubenville, Ohio. During the controlled buy, Patrolman John Lemal and Detective Jason Hanlin of the Steubenville Police Department Narcotics Division were positioned nearby in an unmarked car, listening to the transaction. After it was completed, the confidential informant gave the purchased crack cocaine to the officers.

{¶ 3} With the information provided by the confidential informant, the recording of the controlled buy, and the purchased drugs, the officers obtained a search warrant for Kelley's residence. The search warrant was executed on December 23, 2004. During the search of the house, the officers seized a box of baggies, one baggie containing cocaine residue, one baggie containing less than one gram

of cocaine, a crack pipe, and a piece of mail that was addressed to Kelley at that residence.

{¶ 4} As a result of the above, Kelley was indicted on March 7, 2007, for violating R.C. 2925.03(A)(1) and (C)(4)(a), trafficking in cocaine, a fifth-degree felony; R.C. 2925.14(A)(1), possession of drug paraphernalia, a fourth-degree misdemeanor; and R.C. 2925.11(A) and (C)(4)(a), possession of cocaine, a fifth-degree felony. The jury found her guilty of all three counts. Kelley timely appeals from that decision.

## FIRST ASSIGNMENT OF ERROR

{¶ 5} "The trial court erred to the substantial prejudice of defendant by admitting the audio recording of the alleged drug transaction, where there was no showing that the confidential informant was 'unavailable' for trial."

{¶ 6} There are three discernable arguments made under this assignment of error as to why Kelley's right to confrontation was violated. The first is that the identity of the confidential informant was not disclosed. The second is that the tape of the controlled buy was played for the jury to hear. And the third is that Detective Hanlin was permitted to comment on the meaning of the tape even though the confidential informant did not testify at trial.

{¶ 7} Starting with the identity argument, the general rule of law espoused by the Ohio Supreme Court regarding disclosure of a confidential informant's identity is "that the identity of an informant must be revealed to a criminal defendant when the testimony * * * is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams* (1983), 4 Ohio St.3d 74, 77, 4 OBR 196, 446 N.E.2d 779. Here, neither one of these scenarios is met, for two reasons.

{¶ 8} First and foremost, despite knowing that there was a confidential informant and having access to the tape of the controlled buy, defense counsel never moved for disclosure prior to trial. It was not until the cross-examination of the state's first witness, Officer Lemal, that defense counsel asked him to name the confidential informant. The state objected at that point, a side-bar discussion was held, and the trial court determined that the identity was not required to be disclosed because the informant was not going to testify at trial. The Eighth Appellate District has stated that the state's failure to disclose the identity of the confidential informant does not violate the confrontation clause when there was never a request for the identity. *State v. Henderson,* 8th Dist. No. 88185, 2007-Ohio-2372, 2007 WL 1447711, ¶ 51. It is the defendant's burden to demonstrate the need for disclosure. *State v. Parsons* (1989), 64 Ohio App.3d 63, 69, 580

N.E.2d 800. Making a first request for disclosure during trial does not lend support for the argument that disclosure was needed to prepare for trial or that the testimony of the informant was necessary to establish a vital element of the offense.

{¶ 9} Furthermore, the only reason defense counsel provided for wanting the identity of the informant at that time was that "the jury should be able to compare the voice on the tape with whoever the confident[ial] informant is and that his failure to be here is detrimental to the State's case. We're at least allowed to know who he is." This is not an argument that the elements of the offense cannot be proven without the informant or that a defense was unable to be prepared because they did not have knowledge of the informant.

{¶ 10} Second, even if there was a request for the disclosure prior to trial, the confidential informant's testimony was not vital to establishing the elements of the offense. Thus, the trial court would not have erred in overruling that motion. We concur with the reasoning of the First Appellate District, which held that when a controlled buy is witnessed in its entirety by the police and taped by another police officer, the testimony of the informant is not vital to establishing the elements of the crime. *State v. Thrasher* (Nov. 1, 1995), 1st Dist. No. C–950064, 1995 WL 653842. Admittedly, here we do not have a situation where the police watched the transaction transpire. But, the police did search the confidential informant prior to the controlled buy, wired the informant, followed him to the controlled buy, watched him enter Kelley's house, listened to the buy as it happened, watched him exit the house, and met him at a predetermined location where he was searched and the purchased drugs were turned over to the police. Given those facts, there is no valid reason to distinguish the aforementioned holding in *Thrasher* based upon the facts presented in this case.

{¶ 11} Having disposed of the identity argument, we now turn to the argument regarding the admission of the audio tape of the drug buy. Kelley did not object to the playing or admission of the tape into evidence and thus, she waived all but plain error. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. McKee* (2001), 91 Ohio St.3d 292, 294, 744 N.E.2d 737; Crim.R. 52(B). Further, plain error is recognized only in exceptional circumstances to avoid a miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 95, 7 O.O.3d 178, 372 N.E.2d 804. With that standard in mind, we now review Kelley's argument.

{¶ 12} Kelley cites the United States Supreme Court's decision in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, for support that her right to confrontation was violated. In *Crawford,* the court held that the Sixth Amendment's Confrontation Clause bars the admission of testimonial

hearsay in a criminal trial unless the declarant is unavailable and the defendant has a prior opportunity for cross-examination. *Crawford* at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Federal and state appellate courts examining this holding have explained that it only deals with hearsay; it "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *United States v. Nettles* (C.A.7, 2007), 476 F.3d 508, 517 quoting *Crawford* at 59, 124 S.Ct. 1354, 158 L.Ed.2d 177. State v. *Campbell* (July 2, 1990), 5th Dist. No. CA–8060, 1990 WL 94235. When statements are offered to show context, they are not being offered for the truth of the matter asserted and, thus, do not violate *Crawford*. *United States v. Tolliver* (C.A.7, 2006), 454 F.3d 660, 665–666.

{¶ 13} The confidential informant's statements on the audio tape are not hearsay. They were not being offered for the truth of the matter asserted; rather, they are to show context. Our sister districts have indicated that tape recordings of drug transactions are not hearsay. *State v. Sloan*, 8th Dist. No. 79832, 2002-Ohio-2669, 2002 WL 1265578, ¶ 16; *Campbell*, 5th Dist. No. CA–8060, 1990 WL 94235. We cannot find fault with their reasoning and holdings and embrace them here. Consequently, there is no confrontation problem with the admission of the taped drug transaction.

{¶ 14} We now turn to the third argument, that her right to confrontation was violated when Detective Hanlin was permitted to "interpret" the tape and tell the jury what was happening during the drug buy. Kelley did not object to Detective Hanlin's "interpretation" of the tape and thus, we review this alleged error for plain error. The tape was played for the jury twice during Detective Hanlin's testimony. During that portion of the testimony, he was asked whether he heard evidence during that transaction that Kelley was arranging a drug deal. He said yes and directed the jury to a portion of the tape where Kelley allegedly stated, "I called him. He's getting ready to come." He explained that this statement is referring to Albert McLeod, also known as Abs, Kelley's supplier. He also directed the jury to another portion of the tape where Kelley allegedly says, "I'm going to get fucked up" and "take that piece."

{¶ 15} It is hard, at points, to hear what is being said on the tape; however, portions of it are discernable. For instance, one can hear the confidential informant identify Kelley as Buddha and can hear Kelley make a statement that she called "him" and that he was on his way. A person everyone identified as Abs, Albert McLeod, arrives. He tells the confidential informant that if he wants to "score" again, to contact him, and he gives the confidential informant his address. One can also hear a statement by a female individual that she is going to get "fucked up." The tape also contains a conversation between Abs and Kelley, during which she asks him what took him so long. She jokingly says that

she is not going to call him again. However, the alleged statement made by Kelley about taking "pieces" is not easily discernable.

{¶ 16} Without determining whether Detective Hanlin's testimony that "interpreted" the tape amounted to a confrontation violation, we find that there is no plain error in this situation, and thus no reason to reverse. The outcome of this case would not have been different if Detective Hanlin had not testified about what was being said on the tape. Evidence indicated that prior to the controlled buy, the confidential informant was searched. He was then followed to Kelley's house, the officers watched him enter the house, they listened to the transaction, they watched the confidential informant leave the house, they followed him to another location where he was searched, and the drugs that were purchased were turned over to the police. Furthermore, Kelley made a statement during the search (which is discussed in the next assignment of error) that she had been "busted" and was a small player in the drug hierarchy. Those facts all support the convictions and show that any alleged error did not arise to the level of plain error. This assignment of error lacks merit.

## SECOND ASSIGNMENT OF ERROR

■ {¶ 17} "The convictions of defendant for aggravated trafficking, possession of cocaine and possession of drug paraphenelia [sic] were against the manifest weight of the evidence and therefore the judgment must be reversed and vacated."

{¶ 18} Kelley provides no argument as to why her conviction is against the manifest weight of the evidence. App.R. 16(A)(7) requires that each of appellant's assignments of error include "[a]n argument containing the contentions of the appellant" and reasons supporting those contentions. Since Kelley does not remotely comply with this rule, this court could choose to disregard this assignment of error. App.R. 12(A); *Cincinnati Ins. Co. v. Schwerha,* 7th Dist. No. 04MA257, 2006-Ohio-3521, 2006 WL 1868321, ¶ 41. However, given that it is a manifest-weight-of-the-evidence assignment of error, it is reviewed in the interest of justice.

■ {¶ 19} Under a manifest-weight standard, the appellate court, " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Our discretionary power to grant a new trial is exercised only in the exceptional case

where the evidence weighs heavily against conviction. *Thompkins* at 387, 678 N.E.2d 541.

{¶ 20} Kelley was convicted of three crimes—trafficking, possession of drug paraphernalia, and possession of drugs. Thus, in order to be convicted of those offenses, the evidence was required to prove the elements of those offenses.

{¶ 21} Trafficking, a violation of R.C. 2925.03(A)(1), requires proof that Kelley knowingly sold or offered to sell a controlled substance, which in this case was crack cocaine. At trial, both Patrolman Lemal and Detective Hanlin testified about how a controlled buy occurs, starting with preparing the confidential informant for a controlled buy (searching and wiring the informant) and ending with recovering the drugs from the confidential informant. They explained that this buy followed that formula. Detective John Sowers testified that he was able to identify both Kelley's and the confidential informant's voices on the tape and also indicated that Kelley's nickname is Buddha.

{¶ 22} The tape, which is discussed at length above, was played at trial. As is shown by that synopsis, not much is really said about what is going on. There was never a discussion as to cost or type of drug. However, Detective Hanlin explained that the parties involved in drug transactions are not going to spell out what is going on because traffickers and users fear that their conversation is being recorded by law enforcement:

{¶ 23} "What I was trying to explain was that narcotics traffickers, narcotics users, they're both aware that there's that possibility of recording by law enforcement. It's not typical for people to say abrupt things about that sale as far as amounts of money, typical identifiers that would be obvious identifiers that a drug transaction happened. It's very common that other conversations or distractions, radio, things are used so you can't hear that listening device. Or it's also very common that absolutely nothing will be said and an exchange will be made. Numerous, numerous times have I witnessed, even viewed exchanges where absolutely nothing is said because of that possibility for law enforcement recordings."

{¶ 24} Also, while the search warrant was being executed, Kelley made two statements to the officers. The police admitted that they were interested in using her to get somebody higher up in the drug chain and were hoping she would cooperate. When this sentiment was expressed to her, she became angry and said that nobody would deal with her now that she had been busted. She also stated that the police were picking on her and that she was only a small fish/player in the drug world. These statements were made in response to statements made by the police that they were aware that she and McLeod were involved with drug trafficking:

{¶ 25} "Q. And do you recall what Ms. Kelley said to you on December 23rd, of 2004?

{¶ 26} "A. I inquired of Ms. Kelley about Mr. McLeod because we knew they were—from a—you know, way things happened we knew they were involved together. We were looking at this point for Mr. McLeod.

{¶ 27} "Q. And when you say Mr. McLeod and Ms. Kelley were involved do you mean personally or involved in some other way.

{¶ 28} "A. Involved in trafficking.

{¶ 29} "Q. Drug trafficking?

{¶ 30} "A. Yes.

{¶ 31} "Q. So you have information that you believe that Ms. Kelley and Albert McLeod are involved together in drug trafficking.

{¶ 32} "A. That's correct.

{¶ 33} "Q. And you have that information when you go to Ms. Kelley's house on December 23rd, 2004?

{¶ 34} "A. Yes.

{¶ 35} "Q. And you talk with Ms. Kelley about that?

{¶ 36} "A. Yes.

{¶ 37} " * * *

{¶ 38} "Q. Did she—what else did she say to you that night?

{¶ 39} "A. I spoke to her about cooperating with regard to Mr. McLeod and she said nobody would do anything with her now because she had been busted.

{¶ 40} "Q. When you say you talked with her about cooperating about Mr. McLeod what is that you are asking her to do?

{¶ 41} "A. Typically in these types operations [sic] it's—for lack of better term—there's a hierarchy. In other words drugs are sold down, people sell bigger amounts, then smaller amounts, all the way down to the amounts that we were getting off Ms. Kelley which are not big huge amounts, but typically we try to use people to cooperate to work up the level of the sources and get the sources. * * * So it was our interest to have Ms. Kelley cooperate against Mr. McLeod or anybody else that she may be involved with.

{¶ 42} "Q. Fair to say you were interested in using Ms. Kelley to get somebody higher up in the drug chain?

{¶ 43} "A. Sure.

{¶ 44} "Q. And is that common?

{¶ 45} "A. Sure.

{¶ 46} "Q. Is that how you make a number of arrests in the drug trafficking [sic]?

{¶ 47} "A. That's how it works.

{¶ 48} "Q. Okay. And so is [sic] my understanding that when you talked to her about that she says nobody will deal with her now that's she's been busted?

{¶ 49} " * * *

{¶ 50} "Q. And did she make any other statements to you?

{¶ 51} "A. Right.   I told her she would only be charged that night with paraphernalia.  We didn't charge her on the trafficking count.  * * * We wanted her to cooperate.  From there she got a little bit angry and started to say we were picking on her and she was only a small player and then she eventually got taken to jail."

{¶ 52} These statements, when viewed in their context, could be deemed an implicit admission that she was trafficking, that she was offering to sell or selling drugs.  Admittedly, there is no clear evidence that she received anything from the sale of the drugs, such as marked money or a portion of the drugs purchased.  However, when the above statements are viewed in conjunction with the audio tape, the statements would support the conclusion that she and McLeod were knowingly involved in selling drugs and that she was a lower-level dealer being supplied by McLeod.  Specific sections of the tape that support that conclusion are the sections where she indicates that she called "him" and he was on his way, where she indicates to McLeod that he has taken a while to get there and jokes that she is not going to call him again, and where she says that she is going to get "fucked up."  Other evidence as to the amount of cocaine found in her possession and Detective Hanlin's testimony about the process before and after the controlled buy also indicate that Kelley and McLeod were selling drugs.

{¶ 53} Furthermore, the crack cocaine that the confidential informant purchased from Kelley positively tested as cocaine in a field test, and BCI confirmed, after additional testing, that it was crack cocaine.  Crack cocaine is a controlled substance.  R.C. 2925.01(A);  R.C. 3719.01(C);  R.C. 3719.41 (Schedule II drug).

{¶ 54} Thus, each element of the offense was proven;  we cannot conclude that the jury lost its way on the trafficking conviction.  There is no merit to any argument to the contrary.

■  {¶ 55} Next, possession of drug paraphernalia, a violation of R.C. 2925.14(C)(1), required proof that Kelley knowingly used or possessed with the purpose to use, drug paraphernalia.  The box of baggies and the crack pipe constitute the alleged paraphernalia in this case.  The crack pipe falls under the

definition of "paraphernalia" in R.C. 2925.14(A)(13) as a pipe with or without a screen, used to inhale a controlled substance. Likewise, the baggies could fall under the definition of "paraphernalia" in R.C. 2925.14(A)(10) as containers for packing small quantities of a controlled substance.

{¶ 56} In order for Kelley to be found guilty, she needed to knowingly use or possess with the purpose to use these items. "Possess," as used in R.C. Chapter 2925, means to have control over a substance. But possession cannot be inferred solely from mere access to the substance when the person owns or occupies the premises where the substance is found. R.C. 2925.01(K).

{¶ 57} Kelley never explicitly admitted to using the paraphernalia or possessing the paraphernalia with the purpose to use it; however, the evidence indicates that she was in possession of these items with the intent to use them. Evidence indicated that Kelley and her five-year-old daughter were the only people residing in the house where the paraphernalia was found. Given the definition of the term "possess," this alone is not enough to show that she possessed the items with purpose to use. However, Detective Hanlin testified that a crack pipe in someone's possession typically indicates that the person is a user. Further, he stated that a person saying that he or she is a small-time player or not a big fish in the drug world normally means that the person is a user. Likewise, her statement about being busted logically implies that she knowingly possessed these items with the purpose of using them. Thus, this conviction does not weigh against the evidence.

{¶ 58} Lastly, possession of drugs, a violation of R.C. 2925.11(A), requires proof that she knowingly obtained, possessed, or used a controlled substance. The crack cocaine that was seized during the search was tested at BCI, where it was confirmed to be crack cocaine. As stated above, crack cocaine is a controlled substance. Further, while possession of the crack cocaine in her residence alone is not enough to show possession, her statements about being busted and a small player are an implicit admission of knowingly possessing the drug. Thus, as with the above convictions, it cannot be found that the possession-of-drugs conviction was against the manifest weight of the evidence. This assignment of error lacks merit.

### THIRD ASSIGNMENT OF ERROR

{¶ 59} "The evidence was insufficient as a matter of law to sustain a conviction of the defendant for aggravated trafficking, possession of cocaine or possession of drug paraphenelia [sic]."

{¶ 60} In reviewing a sufficiency challenge, this court, after viewing the evidence in the light most favorable to the prosecution, must determine whether

" 'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 67, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This is a test of the adequacy of the evidence, not the credibility of the evidence. *Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶ 61} Kelley argues that the evidence was insufficient because the crack pipe and the baggies of crack cocaine were not tested for fingerprints, she never admitted she used crack cocaine, the recorded money was not recovered, and there were other individuals present to whom the crack pipe could have belonged. Also, she contends that the only evidence of the alleged drug transaction was the tape of the sale, which had "dubious value."

{¶ 62} Her first argument lacks merit. The fact that there was no fingerprint evidence does not affect the sufficiency of evidence. Other evidence, including her admission to being a small fish/player in the drug hierarchy, supports the convictions for possession of crack cocaine and the crack pipe. Further, it was explained at trial that BCI suggests that the police do not send baggies or crack pipes for fingerprint or DNA testing.

{¶ 63} Her second argument, that she never admitted to using crack cocaine, also lacks merit and fails. As is shown under the previous assignment of error, using the controlled substance is not required for her trafficking conviction. For that conviction, all that was required to be shown was that she was knowingly selling or offering to sell a controlled substance. Thus, any argument about "use" in regard to trafficking is misplaced. As to possession of paraphernalia, "use" is a part of one element, which is to possess with the purpose to use or to use. Similarly, possession of drugs requires use or possession. As was discussed earlier, there was evidence that showed possession with the purpose to use the drug paraphernalia and possession of drugs; there was sufficient evidence to support the convictions. Thus, the second argument lacks merit.

{¶ 64} Her third argument is that the recorded money was not recovered during the search of her house, and thus there was no evidence that she was selling drugs. This argument goes to the sufficiency of the trafficking-in-drugs conviction. As discussed under the manifest-weight analysis, there was no clear indication that Kelley received money or drugs for her part in selling the drugs or offering to sell the drugs. Marked money was not recovered, nor was there any obvious statement on the tape that would indicate she received money or drugs for her part in the sale. See *State v. Pariseau,* 5th Dist. No. 2008–CA–2, 2008-Ohio-4991, 2008 WL 4382699, ¶ 39–40 (indicating that compensation for selling drugs by getting some drugs is sufficient to show selling drugs). However, as aforementioned, her statements to the police, taken in their context, are an

implicit admission of trafficking, especially when viewed together with the statements on the tape, which were discussed above. Consequently, when all the evidence is viewed in the light most favorable to the prosecution, there was sufficient evidence to show that Kelley was selling or offering to sell drugs. Thus, the failure to recover the $40 in recorded money is no indication that the sale did not occur and does not render the evidence insufficient.

{¶ 65} Her fourth argument, that there were others present that the crack pipe could have belonged to, is an implication that merely because the crack pipe was found in her home, it did not mean she had possession of it. The tape of the controlled buy indicates that Abs was present and that there was possibly one other woman present. On the day of the search, Kelley indicated that only she and her daughter lived in the house. Further, Kelley indicated that she had been busted and was just a small player. When all this evidence is viewed in the light most favorable to the prosecution, there was sufficient evidence to show possession with the intent to use for many of the same reasons the conviction was not against the weight of the evidence.

{¶ 66} Her last argument is about the nature of the tape of the controlled buy—an argument similar to that made under the first assignment of error. Since the first assignment of error is meritless and the tape without the testimony of the confidential informant was admissible, when viewed in the light most favorable to the prosecution, there was sufficient evidence to establish the elements of the trafficking offense (for many of the same reasons as were discussed under the manifest-weight-of-the-evidence analysis).

{¶ 67} In all, there was sufficient evidence of the elements of all the offenses for the prosecution to meet its burden of production. The evidence that was discussed in the second assignment of error demonstrates every element of the offenses charged. Thus, this assignment of error lacks merit.

## FOURTH ASSIGNMENT OF ERROR

{¶ 68} "The defendant is denied due process of law under circumstances in which defense counsel fails to object throughout the trial and allows substantially prejudicial evidence to be admitted against the defendant leading to convictions for aggravated trafficking, possession of cocaine and possession of drug parphenelia [sic]."

{¶ 69} Kelley argues that trial counsel was ineffective because he failed to object to the admission of the tape, to object to Detective Hanlin's "interpretation" of the tape, and to file a suppression motion. The argument concerning failure to file a suppression motion is fully argued in the next assignment of

error. Thus, instead of being addressed two times, it will be addressed only in the next assignment of error.

{¶ 70} In order to prevail on a claim of ineffective assistance of counsel, Kelley must demonstrate both (1) deficient performance and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that in the absence of those errors, the result of the trial court would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. To show deficient performance, Kelley must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show prejudice, Kelley must prove that but for her lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. *Bradley* at paragraph two of syllabus.

{¶ 71} In the analysis of the first assignment, it was concluded that the tape was admissible in that it did not violate the confrontation clause. Thus, given that it was not error for the admission of the tape, it cannot be concluded that counsel's performance fell below an objective standard of reasonableness.

{¶ 72} Turning now to Detective Hanlin's "interpretation" of the tape, as was discussed earlier, regardless of whether his testimony violated the confrontation clause, the testimony did not amount to plain error. Since his testimony was not outcome-determinative, Kelley is unable to meet the prejudice prong of ineffective assistance of counsel. As we explained earlier, Kelley's statement about being busted and purportedly being a small player in the drug world, combined with Detective Hanlin's testimony as to what occurred with the confidential informant prior to and after the taped sale, all show that the outcome would not have been different had Detective Hanlin not "interpreted" the tape. Consequently, this assignment of error lacks merit.

## FIFTH ASSIGNMENT OF ERROR

{¶ 73} "The defendant is denied due process of law under circumstances in which defense counsel fails to file pretrial motions to suppress statements and evidence and further fails to object throughout the trial, which allowed substantially prejudicial evidence to be admitted against the defendant leading to convictions for aggravated trafficking, possession of cocaine and possession of drug paraphenelia [sic]."

{¶ 74} The standard for ineffective assistance of counsel is set forth above and equally applies to the arguments made under this assignment of error. Kelley

argues that counsel was ineffective for failing to file a suppression motion, failing to move for disclosure of the confidential informant's identity, and failing to present evidence that a federal lawsuit filed by Kelley against the Steubenville Police Department, although dismissed at the trial level, was on appeal to the Sixth Circuit Court of Appeals.

{¶ 75} The first argument under this assignment, regarding the failure to file a suppression motion, is not clearly argued; it is difficult to understand what supports Kelley's assertion. It is assumed she is arguing that the search warrant was not supported by probable cause. If it was not, then her statements regarding being busted and a small player could possibly be the fruits of that illegal search. Thus, those statements, along with the evidence found, could have been suppressed.

{¶ 76} However, Kelley has failed to present any argument about how the failure to file a suppression motion amounted to deficient performance. She has failed to argue and explain why she believes the suppression motion would have been granted. Failure to file a motion does not result in deficient performance unless the motion would arguably have been granted. Counsel is not considered deficient for failing to file meritless motions. *State v. Green*, 7th Dist. No. 01CA54, 2003-Ohio-3074, 2003 WL 21373172.

{¶ 77} Yet, even if she had provided an argument expressing why the search warrant should have been suppressed, we cannot review the legality of the search warrant because it is not a part of the record. When an appellant argues that trial counsel was ineffective for failing to file a suppression motion and the search warrant is not part of the record, we are to presume the regularity in the proceedings below and find no merit with the argument. *State v. Farris*, 8th Dist. No. 84795, 2005-Ohio-1749, 2005 WL 852409, ¶ 9. This is sound logic and applies to this case. Thus, for those reasons, appellant's first argument lacks merit.

{¶ 78} Next, Kelley argues that trial counsel was ineffective because he failed to move for disclosure of the confidential informant. Trial counsel did not move prior to trial for disclosure of the confidential informant. Instead, trial counsel tried to have the name disclosed during trial (as was explained under the first assignment of error). Without determining whether the failure to move for disclosure prior to trial amounts to deficient performance, we conclude that it does not amount to prejudice. As has been explained multiple times, there was other sufficient evidence of other crimes and, thus, it was not outcome determinative.

{¶ 79} Lastly, Kelley argues that trial counsel should have provided more evidence about her federal lawsuit against the Steubenville Police Department. At trial, trial counsel did question Detective Hanlin about the federal lawsuit; he

asked Detective Hanlin the status of the lawsuit, and Detective Hanlin indicated that it had been dismissed. Trial counsel then asked whether it was on appeal, and Detective Hanlin responded that he was not aware of that. In a sidebar, however, it is clear that trial counsel knew that the case is on appeal to the Sixth Circuit.

{¶ 80} Trial counsel could have attempted to offer this information into evidence another way, to make it clear to the jury that the case was being appealed to the Sixth Circuit. However, failing to do so does not amount to deficient performance, because the point trial counsel was trying to make was that the charges were brought against Kelley because she filed a federal lawsuit against the Steubenville Police Department. Kelley was attempting to show that it was retaliation. Whether it was on appeal really did not affect what she was trying to show. Thus, the first prong of *Strickland* was not met. Yet, even if we concluded that it was deficient performance, prejudice cannot be shown for the reasons expressed in the earlier assignment and above. Consequently, this assignment of error lacks merit.

## SIXTH ASSIGNMENT OF ERROR

{¶ 81} "The state committed prosecutorial misconduct by making improper attacks on defense counsel, which were highly prejudicial and constitute reversible error."

{¶ 82} Kelley contends that the prosecutor, during closing arguments, made a prejudicial comment that warranted a mistrial. She contends that the prosecutor stated that Kelley's trial counsel is "paid to represent drug dealers."

{¶ 83} Kelley did not object to the alleged prosecutorial misconduct; thus, she waives all but plain error. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 126. To reverse her conviction, this court must be persuaded that the prosecutor's statements were not only improper, but that Kelley would not have been convicted but for the improper comments. Crim.R. 52(B); *State v. Fears* (1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136.

{¶ 84} Parties are granted wide latitude in closing arguments. *State v. Smith*, 97 Ohio St.3d 367, 377, 2002-Ohio-6659, 780 N.E.2d 221. Since isolated incidents of prosecutorial misconduct are harmless, we must review the entire closing argument to determine whether the remarks prejudiced appellant. *State v. Ballew* (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369.

{¶ 85} During closing arguments, the prosecutor and defense counsel made jabs back and forth at each other over whether they had a personal interest in this case. It started with defense counsel stating:

{¶ 86} "Now, other than representing Dawn Kelley I don't have any personal agenda in this case. I'm not a Prosecutor, I'm not married to a police officer, I'm

just an attorney trying to do a job for a client under the system of constitutional law and government that we have. So I don't have any personal feelings in this case that color my work here today."

{¶ 87} In her rebuttal argument, Assistant Prosecutor Keenan stated:

{¶ 88} "Passing the buck is great. It's a great defense lawyer line cause what it gets you to do is not look at her. Don't look at her. Because in all of that great State of Ohio stuff and all of that who's married to the Prosecutor and all of that I don't have an interest in the case which I find interesting since he's paid to represent drug dealers. I think he has an interest in it. I have an interest in prosecuting a criminal, he has an interest in defending drug dealers."

{¶ 89} Defense counsel's statement implies that Assistant Prosecutor Jane Keenan had a personal stake in this case. In Kelley's brief, she states that Assistant Prosecutor Keenan is married to Detective Hanlin, and this association led to an added motivation to pursue a conviction against Kelley, because she sued Detective Hanlin in federal district court concerning the same incident that the criminal prosecution was based on.

{¶ 90} Although Assistant Prosecutor Jane Keenan is now Jane Hanlin, this court is not aware and the record does not conclusively disclose that she is married to Detective Hanlin. Regardless of whether or not she is married to him, when reviewing this argument back and forth between the prosecutor and defense counsel, it can be concluded that the prosecutor's statements did not amount to prejudice that warrants a mistrial. The prosecutor's only possible improper comment was that defense counsel is "paid to represent drug dealers." This comment was clearly made in response to defense counsel's indication that he had no personal agenda in this case. The assistant prosecutor was responding to that statement by indicating that of course defense counsel had a personal interest in the case because he was paid to represent Kelley. Thus, defense counsel invited the comment and, thus, cannot now complain about the inappropriateness of it. *State v. Brown* (1988), 38 Ohio St.3d 305, 316–317, 528 N.E.2d 523.

{¶ 91} And, even if it was improper, it did not rise to the level of plain error. Given all of the other evidence that was discussed in the earlier assignments of error, it cannot be concluded that but for that comment, Kelley would not have been convicted. This assignment of error lacks merit.

{¶ 92} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

DONOFRIO and WAITE, JJ., concur.