[Cite as *State v. Bradley*, 2012-Ohio-5880.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 11 CO 26 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| GREGORY L. BRADLEY, Jr., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Common Pleas
                               Court, Case No. 09 CR 291.

JUDGMENT:                      Conviction Affirmed.
                               Sentence Vacated.
                               Remanded for Resentencing.

APPEARANCES:
For Plaintiff-Appellee:        Attorney Robert L. Herron
                               Prosecuting Attorney
                               Attorney John Gamble
                               Asst. Prosecuting Attorney
                               105 S. Market Street
                               Lisbon, OH  44432

For Defendant-Appellant:       Attorney Carl J. King
                               101 E. Sixth Street, Suite 203
                               Little Building
                               East Liverpool, OH  43920

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

                               Dated:  December 5, 2012

DeGenaro, J.

{¶1} Defendant-Appellant, Gregory Bradley, appeals the August 23, 2011 judgment of the Columbiana County Court of Common Pleas convicting him of three counts of drug trafficking and two counts of drug possession with forfeiture specifications and sentencing him accordingly, following a jury trial. On appeal, Bradley asserts the trial court abused its discretion by imposing consecutive sentences; that the court erroneously admitted hearsay on several occasions; that his convictions are against the manifest weight of the evidence; and that his trial counsel was ineffective for failing to file a motion to suppress evidence seized pursuant to an allegedly defective search warrant.

{¶2} Upon review, although not specifically raised by Bradley in the context of his first assignment of error, the trial court erred by misstating the applicable term of post-release control during the sentencing hearing and in the sentencing entry. Bradley's sentence was not otherwise contrary to law or an abuse of discretion. The trial court considered and balanced the principles and factors in R.C. 2929.11 and R.C. 2929.12 and the resulting nine-year aggregate prison sentence was reasonable. The testimony at issue was not hearsay because it was not offered to prove the truth of the matter asserted and therefore the trial court's admission of those statements was proper. The jury did not clearly lose its way so as to create a manifest miscarriage of justice. Finally, counsel was not ineffective; counsel is not required to file meritless motions, and moreover, the search warrant is not part of the record in this case and therefore we must presume the regularity of the proceedings. Accordingly, Bradley's conviction is affirmed, but his sentence is vacated and the cause is remanded for resentencing for the limited purpose of properly imposing post-release control in accordance with R.C. 2929.191.

## Facts and Procedural History

{¶3} Sometime prior to October 2009, the Columbiana County Drug Task Force received an anonymous phone call reporting that a man by the name of "TJ" was selling narcotics out of a trailer on State Route 517, in Columbiana County. The Drug Task Force was later contacted by Tammi Dennison, a paid informant, who reported she was acquainted with TJ and could likely purchase drugs from him.

{¶4} The Drug Task Force, with Dennison's assistance, conducted three

controlled drug buys from TJ, from his State Route 517 residence. It was later determined that TJ was Appellant Gregory Bradley. On October 30, 2009, Dennison purchased approximately 3.5 grams of crack cocaine from Bradley. On November 5, 2009, Dennison again purchased approximately 3.5 grams of crack cocaine from Bradley. Finally, on November 16, 2009, Dennison purchased approximately 4.2 grams of crack cocaine and 30 Percocet tablets from Bradley. According to Dennison, Bradley's two minor children, who were approximately 10 months old and three years old, respectively, were present at the home during the controlled buys.

{¶5} Based upon the evidence obtained from the controlled buys, a warrant was issued to search Bradley's residence. The search warrant was executed on November 19, 2009. Officers recovered, among other things: a digital scale containing cocaine residue, several empty containers for narcotic pain medication prescribed to persons who did not live at the residence, a beer can with a hidden compartment containing cocaine, a bag containing 0.9 grams of cocaine, a small box containing cocaine residue, two bags of marijuana, and two oxycodone tablets. They also seized two twenty-dollar bills, which were on a nightstand next to the oxycodone tablets.

{¶6} On March 24, 2010, as a result of the controlled buys and the evidence found during the execution of the search warrant, the Columbiana County Grand Jury indicted Bradley on three counts of crack cocaine trafficking in the vicinity of a juvenile (R.C. 2925.03(A)(1)), third-degree felonies pursuant to former R.C. 2925.03(C)(4)(c); one count of aggravated trafficking in drugs (Percocet) in the vicinity of a juvenile (R.C. 2925.03(A)(1)), a third-degree felony pursuant to R.C. 2925.03(C)(1)(b); one count of aggravated possession of drugs (oxycodone) (R.C. 2925.11(A)), a fifth-degree felony pursuant to R.C. 2925.11(C)(1)(a); and one count of cocaine possession (R.C. 2925.11(A)), a fifth-degree felony pursuant to R.C. 2925.11(C)(4). Each possession charge had a forfeiture specification concerning the digital scale and the $40 in cash. Bradley was arraigned, pled not guilty and counsel was appointed. He waived his speedy trial rights on August 11, 2010. Bradley later retained counsel. After some negotiations, a plea deal was apparently worked out with the prosecution; however, against the advice

of defense counsel, Bradley ultimately rejected the offer and elected to go to trial.

{¶7} The case proceeded to a jury trial on April 5, 2011. Following jury selection, Bradley indicated his desire to change his plea to guilty. A plea hearing was held outside of the presence of the jury. Bradley expressed his disapproval with counsel's representation, and stated he wanted to plead guilty as long as he could change his plea at a later point once he obtained new counsel. It was clear Bradley did not agree he had committed all of the offenses as charged. In the end, the court made a finding that Bradley was not voluntarily changing his plea and decided to reconvene the trial. Defense counsel made an oral motion to withdraw from representation, which the trial court overruled.

{¶8} At trial, the State presented several Drug Task Force agents as witnesses who provided background about controlled buy procedures, the actual controlled buys in this case and information about the drug trade generally. Detective Dan Downard first presented some background about how the Task Force functions. Det. Downard also explained the training he received, how controlled buys are conducted, the role of confidential informants, and the operation of the drug trade in general. He explained that informants and their vehicles are carefully searched prior to a controlled buy to make sure informants do not have contraband on them such as drugs or weapons. If the informant has cash on her, typically the agents will hold that money during the controlled buy. Specific "buy money" is provided to the informant by the Task Force and the bills are recorded in advance. In other words, the environment is controlled by the agents. Det. Downard explained how the Task Force came to investigate Bradley, how the controlled buys were arranged with Dennison, and what was recovered during the buys and later, during the execution of the search warrant.

{¶9} On cross, Det. Downard conceded that the Task Force did not recover any of the "buy money" provided to Dennison for each transaction; however, he stated this was "not unordinary." He was unsure of the exact amount paid to Dennison for her services, but estimated it was approximately $250 for all three controlled buys.

{¶10} Lieutenant Allan Young, another member of the Task Force testified that he

took part in the controlled buys, providing surveillance. He was also on site before and after each buy and assisted with preparing and searching the informant.

{¶11} Dennison, who had been a paid informant for the Task Force off and on for 25 years, and was at the time of trial a full-time student and private security worker, testified extensively about her background, how she came to know Bradley and how she conducted the controlled buys. During the controlled buys, Dennison wore a digital video and audio recorder concealed in her jacket and the resulting recording was played for the jury and admitted as an exhibit. Dennison described the events on the recording as it was played in court.

{¶12} Ohio Bureau of Criminal Identification and Investigation (BCI) forensic chemist Stephanie Laux explained the testing she performed on the drugs and paraphernalia seized as a result of the controlled buys and the search of Bradley's residence. State's Exhibits admitted as evidence included Laux's written report, still surveillance photographs taken by agents during the controlled buys, and photographs of the drug paraphernalia and other items seized during the search of Bradley's home. After the State rested, the defense made a Crim.R. 29 motion for acquittal, which was denied.

{¶13} Bradley testified in his own defense. He admitted to the possession charges but contested the trafficking charges, especially the crack cocaine trafficking. His theory at trial was that Dennison was a drug user and dealer herself and that she lied to the agents to gain funds to support her own habit. Bradley denied ever selling or giving crack cocaine to Dennison. He testified that selling crack cocaine was against his moral code. He claimed that Dennison lied to the agents about the source of the crack cocaine following the controlled buys. However, he admitted he was a powder cocaine and marijuana user.

{¶14} With regard to the Percocets, Bradley claimed that they belonged to Dennison and that he traded marijuana for them. However, the recording shows Bradley offering a large bag of Percocets for sale. Bradley claimed that when he stated on the tape that the Percocets were $4 per pill that he was stating their value, not actually offering them for sale. Although it was pretty clear on the recording, Bradley denied

telling Dennison that he would get her a lower price ($3/pill) if she purchased a larger quantity. Bradley did not deny that as Dennison was leaving, he instructed her to let him know if she knew anyone else who wanted anything.

{¶15} Bradley also disputed that his children were in the vicinity during the controlled buys. He testified they did not live with him at the residence; he said they lived with their grandmother at a neighboring residence. He claimed that any child-like sounds on the digital recording could have been from the television or from his children playing outside.

{¶16} The State then briefly recalled Det. Downard to testify. Det. Downard confirmed that children were present at the residence when the search warrant was executed. Det. Downard also testified that crack cocaine remnants were found during the search, specifically in the can with the hidden compartment. After the defense rested, Bradley's renewed motion for acquittal was denied. With regard to Counts 1 through 4, (the trafficking offenses), the jury was instructed on the lesser included offense of drug possession.

{¶17} After deliberating, the jury returned to the courtroom with a verdict; however, the verdict forms were not properly completed. As the trial court explained it, for Count 1, neither the verdict form as to the indictment nor the lesser included offense was completed, the first additional finding for Count 1 was not completed, but the second additional finding for Count 1 was completed. With regard to Count 2, the verdict form as to the indictment and the lesser included offense were both incomplete, the first additional finding for Count 2 was not completed, but the second additional finding for Count 2 was completed. The verdict form for Count 3 was not complete; the verdict form for the lesser included offense to Count 3 was also incomplete. However, the verdict form for the additional finding for Count 3 was completed. On Count 4, the verdict form as to the indictment and the lesser included offense were both incomplete, the first additional finding for Count 4 was not completed, but the second additional finding for Count 4 was completed. The verdict form on Count 5 was not completed, but the specification for Count 5 was completed. Finally, with regard to Count 6, the verdict form was not

completed, but the specification for Count 6 was completed.

**{¶18}** Defense counsel moved for a mistrial, which was overruled. The trial court reinstructed the jury, explaining that it would be necessary for them to complete a verdict form as to each count and/or the applicable lesser included offense.

**{¶19}** The jury deliberated and again returned with verdict forms that were improperly completed. Defense counsel made a second motion for mistrial, which was overruled. The trial court reinstructed the jury, explaining that they could consider the lesser included offenses and complete those verdict forms if they chose, but that it would be inconsistent to return a verdict on both the charged offense and the lesser included offense. The jury was given new verdict forms for some of the counts. When the jury returned they had properly completed all of the forms and found Bradley guilty of all of the offenses as charged in the indictment, along with the additional findings (regarding whether the offenses took place in the vicinity of a juvenile) and the forfeiture specification.

**{¶20}** The court continued the sentencing until a PSI could be completed. On August 18, 2011, a sentencing hearing was held. The trial court sentenced Bradley to two years in prison on each of the four trafficking counts, to be served consecutively to one another, and one year on each of the two possession counts, to be served concurrently with one another, but consecutive to the trafficking counts, for an aggregate prison term of nine years. Bradley was given 5 days of jail-time credit, his driver's license was ordered suspended for 5 years, he was ordered to pay restitution to the Drug Task Force, a lifetime weapons disability was imposed, and the money and digital scales were ordered forfeited to the State. A five-year term of post-release control was also imposed and the consequences of violating post-release control were specified.

## Sentencing

**{¶21}** In his first of four assignments of error, Bradley asserts:

**{¶22}** "The trial court erred when it imposed consecutive sentences, in violation of the sentencing statutes and denied the Defendant-Appellant due process of law when it failed to impose a sentence that was proportionate to that imposed on other similarly

situated offenders; therefore, Defendant-Appellant's sentence was an abuse of discretion."

**{¶23}** Review of a felony sentence requires a two-step process. First, an appellate court reviews the sentence to ensure the sentencing court clearly and convincingly complied with the applicable laws. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶4. A trial court's sentence would be contrary to law if, for example, it were outside the statutory range, in contravention to a statute, or decided pursuant to an unconstitutional statute. *Id.* at ¶15. If this inquiry is satisfied, an appellate court then reviews the trial court's sentencing decision for abuse of discretion. *Kalish* at ¶17, 19-20. An abuse of discretion means more than an error of law or judgment; but rather implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶24}** With regard to the first prong, although not specifically raised on appeal by Bradley, the trial court's notification and imposition of post-release control in this case was improper.

**{¶25}** When sentencing a felony offender to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about post-release control, and the court must incorporate that notice into its sentencing judgment entry. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, paragraph one of the syllabus. A trial court's failure to properly notify a felony offender of post-release control renders the sentence partially void. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶27-29. For sentences imposed after July 11, 2006, the appropriate remedy in correcting the trial court's partially void sentence is to resentence the offender pursuant to R.C. 2929.191. *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, paragraph two of the syllabus; *State v. Pullen*, 7th Dist. No. 11 MA 10, 2012-Ohio-1498, ¶15.

**{¶26}** Bradley was convicted of four third-degree felonies and two fifth-degree felonies. None of the convictions were for sex offenses, and in committing the third-degree felonies Bradley did not cause or threaten to cause physical harm to a person.

*See* R.C. 2967.28(B)(1) and (3) (providing for lengthier post-release control in those situations).

**{¶27}** Thus, 2967.28(C) applies, which states in pertinent part:

> Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of *up to three years* after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender. This division applies with respect to all prison terms of a type described in this division, including a term of any such type that is a risk reduction sentence. (Emphasis added.)

**{¶28}** In other words, the proper term of post-release control in Bradley's case was a discretionary term of up to three years. However, during the sentencing hearing, and in the sentencing entry, the trial court erred by stating: "you will be subject to Post Release Control for a period of five years." The sentencing entry reads: "The Defendant may be supervised by the Parole Board on post release control for a period of five (5) years after released from prison." Bradley was sentenced in 2011, and thus the remedy for these errors is a limited resentencing pursuant to R.C. 2929.191 to correct the flawed imposition of post-release control. *See Singleton, supra.*

**{¶29}** Aside from the post-release control issue, Bradley's sentence is not otherwise contrary to law. The nine-year aggregate prison sentence chosen by the trial court was within the statutory range for 4 third-degree felony offenses and 2 fifth-degree felony offenses; the trial court could have sentenced Bradley from 1 to 22 years in prison. Former R.C. 2929.14(A)(3) and (5). In addition, the trial court stated expressly in its sentencing entry that it had considered the felony sentencing principles and factors contained in R.C. 2929.11 and 2929.12. Further, Bradley was afforded his allocution rights pursuant to Crim.R. 32(A)(1), when the court personally addressed him and asked

him if he had anything to say for himself and Bradley made a lengthy statement. Thus, aside from the post-release control issue, Bradley's sentence was not otherwise contrary to law.

**{¶30}** Second, this court must determine whether the nine-year aggregate prison term chosen by the trial court was an abuse of discretion. To this end, Bradley asserts that the trial court erred by imposing a sentence that was disproportionate to that received by other similar offenders.

**{¶31}** R.C. 2929.11(B) does provide that a sentencing court should impose a sentence that is "consistent with sentences imposed for similar crimes committed by similar offenders." However, this court has previously concluded that to preserve a disproportionality argument for appeal, "the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis[.]" *State v. McClendon*, 7th Dist. No. 11 MA 15, 2012-Ohio-1410, ¶15, quoting *State v. Miller*, 2d Dist. No. 09-CA-28, 2010-Ohio-2138, ¶51.

**{¶32}** Bradley did not raise disproportionality during sentencing, except perhaps when counsel argued that Bradley's crimes "were not probably the most heinous version of these offenses." Bradley failed to proffer evidence about other cases concerning similar offenders into the record. It is impossible to tell whether any other similarly situated defendants received more lenient sentences. Thus, Bradley's argument regarding disproportionate sentences is meritless.

**{¶33}** Further, Bradley alludes that his sentence was somehow a punishment for his decision to proceed to trial instead of entering a guilty plea. Although Bradley is correct that a defendant should never be punished for exercising his right to trial, *see, e.g., State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637 (4th Dist.), there is simply no evidence that this occurred in the present case. During a change of plea hearing held shortly after trial had commenced, the trial court concluded that Bradley was not voluntarily changing his plea and reconvened the trial. However, there is no evidence that the trial court even considered this when sentencing Bradley.

**{¶34}** The trial court's sentencing decision was reasonable; the trial court could

have sentenced Bradley up to 22 years in prison had all of the sentences been imposed consecutively. The trial court's decision to impose a nine-year aggregate sentence is reasonable based upon the fact that Bradley had a lengthy criminal history, the trafficking charges were committed in the vicinity of juveniles, and additional unrelated criminal charges were filed against Bradley after the indictment in the instant case. *See* R.C. 2929.12(B), (D)(2) and (3).

{¶35} Thus, for the foregoing reasons, Bradley's first assignment of error is meritorious in part. The trial court's imposition of post-release control was improper, and therefore the matter must be remanded for a limited resentencing to correct the post-release control errors, pursuant to R.C. 2929.191.

### Hearsay/Confrontation Clause Issues

{¶36} In his second assignment of error, Bradley asserts:

{¶37} "The trial court erred and thereby deprived Appellant of due process of law and confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution by allowing prejudicial hearsay evidence."

{¶38} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶43, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶39} Evid.R. 802 generally prohibits the introduction of hearsay unless the evidence falls under a specific exception to the hearsay prohibition. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The purpose of the rule against hearsay is to keep unreliable evidence, particularly evidence that is not subject to cross-examination, away from the jury or trier of fact. *State v. Wolff*,

7th Dist. No. 07 MA 166, 2009-Ohio-2897, ¶74.

**{¶40}** Importantly, "[i]f a statement is not offered for the truth of the matter asserted, however, it is not prohibited by the hearsay rule and will be admissible, subject to the standards governing relevancy and undue prejudice." *State v. LaMar,* 95 Ohio St.3d 181, 767 N.E.2d 166, ¶57, citing *State v. Maurer*, 15 Ohio St.3d 239, 262-263, 473 N.E.2d 768. For example, " 'testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay.' " *LaMar* at ¶57, quoting *Mauer* at 262.

**{¶41}** Bradley takes issue with two instances where he believes prejudicial hearsay was admitted. The first occurred when Detective Downard was testifying about why the Drug Task Force began investigating Bradley:

Q. So Detective Downard, I want to direct your attention, as you know, to the 30th day of October, 2009, and ask you if you had occasion to essentially direct an investigation involving the sale of drugs here in Columbiana County at a residence on State Route 517 known as 42802 State Route 517 * * * ?

A. Yes. We had received information that there was an individual - -

MR. LANZO: Objection.

THE COURT: Basis?

MR. LANZO: Hearsay. He's going to testify about information he received. There's no, the declarant's not here.

THE COURT: Mr. Gamble?

MR. GAMBLE: The testimony is not being offered for the truth of the matter that's asserted, only to explain how he became involved and what purpose he conducted the investigation.

**{¶42}** The trial court overruled the objection and Det. Downward answered the question as follows: "We received information via anonymous phone calls on other

individuals that there was a sale of narcotics on 517. At that time we did not know the address. However, it was stated that there was an individual that went by the name of TJ was involved in these sales."

**{¶43}** The trial court made the correct ruling here. The testimony was not hearsay as it was not offered for its truth. Instead, it was offered to explain why the Task Force began investigating Bradley in the first place. This situation is similar to that in *State v. Thomas*, 61 Ohio St.2d 223, 400 N.E.2d 401 (1980), where the defendant contended that the testimony of law enforcement officials that they had received information from unnamed individuals about a "sports bookmaking" operation taking place was inadmissible hearsay. The Ohio Supreme Court concluded that argument was "devoid of any merit." *Id*. at 232. The Court concluded the "testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *Id*.

**{¶44}** Second, Bradley takes issue with the admission of certain testimony from the informant, Dennison, regarding the circumstances that led her to provide information about Bradley to the Drug Task Force:

> Q. Okay. Ms. Dennison, I want to draw your attention then to October of 2009. Did you have occasion to provide information to the Columbiana County Drug Task Force prior to that time regarding an individual that you were, were acquainted, or knew rather, as TJ who lived near Lisbon, Ohio?
>
> A. Yes I did.
>
> Q. What were the circumstances surrounding or providing that information to the Drug Task Force?
>
> A. When I first met him I was contacted by some people who told me that he was supplying my son with drugs.

MR. LANZO:  Objection.

MR. GAMBLE:  Your Honor, it's not being offered as the truth of the matter.

THE COURT:  Well, hold on.  Go ahead and state your objection.

MR. LANZO:  The objection is a hearsay objection.  It's not only hearsay but she's saying that it's just some random person out in the ether. I mean, this is clearly hearsay.  Whatever it's being offered for - - if you read the Indictment it has to go to the truth of the matter.  So the objection is that it's based on hearsay.

THE COURT:  Mr. Gamble?

MR. GAMBLE:  No, it doesn't go to the truth of the matter of certain, Your Honor.  But it goes to the background and how Ms. Dennison became involved in this particular investigation.  The information that she got.  And then we'll get very quickly into the actual investigation.

THE COURT:  I'm going to sustain the objection because I believe she started to tell us what somebody reported to her.

Q.  Ms. Dennison, without telling us what somebody told you, did you receive some information relative to this person you knew as TJ and one of your sons?

A.  Yes, I did.

Q.  What was the information in general, without saying what somebody told you?  What was that information?

MR. LANZO:  Maintain the objection.  It calls for the same response.

THE COURT:  Well, she hasn't started to answer yet.  Go ahead, ma'am.

A.  He was providing my son with drugs.  So I talked to my son.  I found out it was true.

MR. LANZO:  Maintain the objection, Your Honor.

THE COURT:  Okay.  The objection is overruled.  But ma'am, try to

answer the question based on what you did rather than what somebody told you. Okay. Mr. Gamble?

**{¶45}** Dennison went on to explain that her son was abusing drugs and so she went, as a mother, to ask Bradley to stop supplying her son with drugs. According to Dennison, Bradley told her he did not realize the son had that big of a problem and agreed he would no longer continue to supply him. Dennison further testified that as she was leaving that day, (which was approximately one year before the controlled buys took place), Bradley offered to supply *her* with drugs.

**{¶46}** The trial court correctly overruled the second objection. The charges at issue in this case did not concern drug sales to Dennison's son; the statements made by Dennison's son were not offered to prove the truth of the matter asserted. Rather, the statements were admitted to provide background as to how Dennison came to know Bradley. Further, the trial court instructed Dennison to confine further testimony to her actions, which she did.

**{¶47}** Bradley argues that the trial court erred by failing to provide a curative instruction to the jury after it sustained the first objection detailed above. However, defense counsel did not request a curative instruction, either at the time, or later when discussing jury instructions and thus this argument is waived absent plain error. *See State v. Jones*, 7th Dist. No. 06 MA 109, 2008-Ohio-1541, ¶65 ("if the defense objects and has its objection sustained but allows the trial to continue without seeking curative instructions for any statements that made it into the record, any error is waived.") The plain error doctrine "is a wholly discretionary doctrine whereby the appellate court may, but need not, take notice of errors which are obvious and which affect substantial rights that are outcome determinative. See, e.g., Crim.R. 52; *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶62. This elective tool is to be used with the utmost of care by the appellate court in only the most exceptional circumstances where it is necessary to avoid a manifest miscarriage of justice." *Jones* at ¶65. Given the substantial evidence of Bradley's guilt presented at trial, the trial court's failure to provide a curative instruction

does not rise to the level of plain error in this case.

**{¶48}** Accordingly, for the above reasons, Bradley's second assignment of error is meritless.

**Manifest Weight**

**{¶49}** In his third assignment of error, Bradley asserts:

**{¶50}** "Defendant-Appellant's convictions were not supported by sufficient evidence and were against the manifest weight of the evidence in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution."

**{¶51}** Although Bradley mentions both sufficiency and manifest weight in the above-quoted text of this assignment of error, the arguments in his brief are confined to manifest weight.

**{¶52}** Weight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *Id*. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶53}** To determine whether a verdict is against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶54}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the factfinder lost its way.' " *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, 2008

WL 5245576, ¶31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶81 (2d Dist.). In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, ¶13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶55}** Bradley was convicted of three counts of drug trafficking pursuant to R.C. 2925.03(A)(1) which provides that "[n]o person shall knowingly do any of the following: * * * Sell or offer to sell a controlled substance[.]" For purposes of chapter 2925 of the Revised Code a "sale" "includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 2925.01(A)(1) (incorporating by reference R.C. 3719.01(A)(A).) The trafficking counts included an additional finding that they were committed in the vicinity of a juvenile, which elevated the crimes from fourth-degree felonies to third-degree felonies. Former R.C. 2925.03(C)(4)(c) and R.C. 2925.03(C)(1)(b).

**{¶56}** Bradley was also convicted of two counts of drug possession pursuant to R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). The possession counts related to the drugs found and seized during the execution of the search warrant.

**{¶57}** Bradley argues that because the jury had to be twice reinstructed on the verdict forms, the jurors were clearly confused and lost their way, rendering all of his convictions against the manifest weight of the evidence. While the jury was confused

about how to properly complete the verdict forms, specifically the court's instructions regarding lesser included offenses, this does not necessarily mean the jury was confused about the evidence presented. Moreover, the more appropriate way to challenge the issue regarding the verdict forms on appeal would be to assign as error the trial court's denial of the motions for mistrial Bradley made on that basis.

{¶58} In any event, the evidence at trial was fairly straightforward and Bradley's convictions were not against the manifest weight of the evidence.

{¶59} Dennison testified that on three separate occasions she purchased drugs from Bradley, using funds from the Drug Task Force. Dennison testified that on October 30, 2009, she purchased approximately 3.5 grams of crack cocaine from Bradley. On November 5, 2009, Dennison again purchased approximately 3.5 grams of crack cocaine from Bradley. Finally, on November 16, 2009, Dennison purchased approximately 4.2 grams of crack cocaine and 30 Percocet tablets from Bradley. According to Dennison, Bradley's two minor children, who were approximately 10 months old and three years old, respectively, were present at the home during the controlled buys. Dennison's version of events was supported by the digital recording of the controlled buys. Bradley can be seen and heard on the digital recording and the voice of a small child can be heard in the background during each of the controlled buys. The Drug Task Force agents testified at length about the various precautions they take to ensure that the informant does not already have contraband on her when she initiates the controlled buy. These include searching the informant's person and vehicle.

{¶60} Turning to the defense's case, when Bradley took the stand he admitted to the possession charges, i.e., he admitted that the two oxycodone pills and the small amount of powder cocaine found belonged to him. Essentially, he only contested the trafficking charges. His theory at trial was that Dennison was a drug user and dealer herself and that she lied to agents. He denied ever selling or giving crack cocaine to Dennison. He testified that selling crack cocaine was against his moral code, and claimed he never sold crack cocaine to Dennison or anyone else. He claimed that Dennison lied to the agents about the source of the crack cocaine following the controlled

buys. However, he admitted he was a powder cocaine user and Det. Downard confirmed that there was a small amount of *crack* cocaine found hidden inside of a can when they executed the search warrant.

**{¶61}** With regard to the Percocets, he seemed to claim that they belonged to Dennison and that he traded marijuana for them. However, the recording shows Bradley offering a large bag of Percocets for sale. Bradley can be heard telling Dennison that the Percocets were $4 per pill, but that he could get her a lower price ($3 per pill) if she purchased a larger quantity. On the stand, Bradley claimed that when he stated on tape that the Percocets were $4 per pill that he was merely stating their value, not actually offering them for sale. However, the jury was free to disbelieve this. Further, Bradley did not deny that as Dennison was leaving, he instructed her to let him know if she knew anyone else who wanted anything.

**{¶62}** Bradley also disputed that his children were in the vicinity during the controlled buys. He testified they did not live with him at the residence; he said they lived with their grandmother at a neighboring residence. He claimed that any child-like sounds on the digital recording could have been from the television or from his children playing outside. However, as indicated, Dennison testified that the children were in the residence each time.

**{¶63}** In the end, it was within the province of the jury to believe Dennison over Bradley. Resolving issues of credibility is a function of the jury, not a reviewing court. To the extent the jury found Dennison to be more credible, they did not clearly lose their way so as to create a manifest miscarriage of justice. Thus, Bradley's convictions are not against the manifest weight of the evidence. Bradley's third assignment of error is meritless.

### Ineffective Assistance of Counsel

**{¶64}** In his fourth and final assignment of error, Bradley asserts:

**{¶65}** "Whether trial counsel's representation was deficient and affected the outcome of the case. Defendant-Appellant received ineffective assistance of counsel when counsel failed to file a motion to suppress the evidence seized as a result of a

warrant search."

**{¶66}** In order to demonstrate ineffective assistance of counsel, a criminal defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶67}** To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶68}** The defendant bears the burden of proving counsel's alleged ineffectiveness, since Ohio law presumes a licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). If a defendant cannot show how counsel's errors undermined the reliability of the court's decision, there is no basis for finding that his right to counsel has been violated. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶109; *Strickland* at 693.

**{¶69}** Bradley asserts that counsel was ineffective for not filing a motion to suppress the evidence seized during the execution of the search warrant. Counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶65.

**{¶70}** Bradley argues that the search warrant was based upon stale evidence, which would have warranted suppression of the seized evidence. However, Bradley concedes that the search warrant was executed on November 19, 2009—three days after the third controlled buy took place on November 16, 2009. It is difficult to see how that argument would have had any chance at winning a suppression motion.

**{¶71}** Moreover, there is a larger probative problem with Bradley's argument: there

is no search warrant in the record before this court. "When an appellant argues that trial counsel was ineffective for failing to file a suppression motion and the search warrant is not part of the record, we are to presume the regularity in the proceedings below and find no merit with the argument." *State v. Kelly*, 179 Ohio App.3d 666, 2008-Ohio-6598, 903 N.E.2d 365, ¶77 (7th Dist.), following *State v. Farris*, 8th Dist. No. 84795, 2005-Ohio-1749, ¶9. Accordingly, for all of the above reasons, Bradley's fourth assignment of error is meritless.

## Conclusion

**{¶72}** In sum, the trial court erred by misstating the applicable term of post-release control during the sentencing hearing and in the sentencing entry. Bradley's sentence was not otherwise contrary to law or an abuse of discretion. The trial court considered and balanced the principles and factors in R.C. 2929.11 and R.C. 2929.12 and the resulting nine-year aggregate prison sentence was reasonable. The testimony at issue was not hearsay because it was not offered to prove the truth of the matter asserted and therefore the trial court's admission of those statements is proper. The jury did not clearly lose its way so as to create a manifest miscarriage of justice. Finally, counsel was not ineffective; counsel is not required to file meritless motions, and moreover, the search warrant is not part of the record in this case and therefore this court must presume the regularity of the proceedings. Accordingly, Bradley's conviction is affirmed, but his sentence is vacated and the cause is remanded for resentencing for the limited purpose of properly imposing post-release control in accordance with R.C. 2929.191.

Waite, P.J., concurs.

Vukovich, J., concurs.