[Cite as *State v. Yetts*, 2019-Ohio-1203.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JAMAR YETTS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0004.**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 17 CR 114.

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin, Jefferson County Prosecutor* and *Atty. Samuel A. Pate,* Assistant Prosecuting Attorney, Jefferson County Justice Center, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee.

*Atty. Eric M. Reszke*, Suite 810, Sinclair Building, Steubenville, Ohio 43952, for Defendant-Appellant.

Dated: March 29, 2019

---

**WAITE, P.J.**

**{¶1}** Appellant Jamar Yetts appeals from the judgment of the Jefferson County Court of Common Pleas finding him guilty of possession of cocaine, trafficking in cocaine, having weapons under disability and receiving stolen property, following jury trial. Appellant raises numerous issues in this appeal. He argues his conviction is against the manifest weight of the evidence. He also contends the trial court erred in sentencing him to a term of eleven years for the convictions. Additionally, he argues error occurred when his letter offering to plead guilty in return for a lesser sentence was presented to the jury. Finally, Appellant contends the trial court erred in granting his request to self-represent. Based on the analysis below, the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

**{¶2}** On June 14, 2017, the Jefferson County Drug Task Force used two confidential informants to purchase cocaine from Appellant. At the time of the transaction, Appellant was sitting in his vehicle in the parking lot outside of his apartment. The drug task force had in place an established protocol for controlled drug buys. Detective Tom Ellis ("Det. Ellis") of the task force testified that the protocol was followed in this buy. First, a telephone call was made by an informant requesting he meet with Appellant so he could purchase drugs - $40 worth of cocaine. This call was recorded by the task force. At the end of the recording, Det. Ellis noted on the recording the date and time; the name of Appellant; Appellant's telephone number; the type of drug being purchased and the dollar amount of the buy. After the buy was set up, Confidential Informant #1 was fitted with an audio and video recording device. Confidential Informant #2 was not. Det. Ellis was stationed in a vehicle across the street from Appellant's apartment where the sale took place and took photographs of the transaction. A review of the video reflects that Det.

Ellis provided an introductory narrative including the date, Appellant's name and that the transaction involved a $40 buy of cocaine. The video shows both informants driving to the location. Confidential Informant #2 got out of the car first. Informant #1 followed shortly after and approached Appellant and Informant #2. Although the video is somewhat shaky and difficult to follow, it appears that the buy had already occurred between Appellant and Informant #2 by the time Informant #1 reached Appellant's car. Appellant's face is momentarily visible on the video but there is no audio discussing the buy nor is there visible confirmation. Once the transaction was concluded, the informants met Det. Ellis at a predetermined location where they turned over the contraband. The substance was field tested as positive for cocaine.

{¶3} On July 20, 2017, the same two confidential informants arranged a second purchase of cocaine from Appellant at his residence at 730 N. Seventh Street, Apartment 212, Steubenville, Ohio. As with the June 14th buy, a recorded telephone call was made to set up the purchase. After the call, Confidential Informant #1 was again wired with an audio/video device and Confidential Informant #2 was not. The buy is memorialized in three digital video files, each approximately ten minutes in length. A review of the first video file for this buy begins with a short introductory statement by Det. Ellis, reflecting the date and time, and that the buy was for $50 of cocaine from Appellant at his residence in Steubenville. The remainder of this file shows the two confidential informants driving to Appellant's apartment building. The second video file begins with the informants exiting their vehicle and standing outside of it awaiting Appellant. The number "730" can clearly be seen on the side of the building, which confirms Appellant's address of 730 North Seventh Street in Steubenville. The next six minutes of video is silent and the camera is

stationary and pointed skyward. At approximately six and half minutes into this video file, Appellant is seen arriving in a burgundy SUV, similar to the vehicle in the video and photographs from the June 14th buy. The informants approach Appellant, who acknowledges them briefly, and both informants follow Appellant into the building lobby. At this point, however, Confidential Informant #1 states that he is going to see his mother, who apparently lives in the building. As they reach the elevator, Appellant says what sounds like, "Are you going to tell her your problems?" Informant #1 responds, "What?" Appellant says, "Go visit your mom." Appellant and Informant #2 enter the elevator. The rest of the video consists of Informant #1 walking through the halls, briefly visiting his mother's apartment and saying to her, "I'm doing something. I'll tell you about it later." Informant #1 then waits in the hall near the elevator. Appellant and Informant #2 exit the elevator shortly after, and this concludes the second video file. The third video file reveals the two informants back in their vehicle and driving to the predetermined location to meet with Det. Ellis. During the drive, both informants discuss their concern about not capturing the buy on video. Informant #2 places a call to Det. Ellis telling him that Informant #1 did not take part in the buy and asking if it is a problem that the buy was not captured on video. In the final ten seconds, the informants both exit the vehicle after apparently arriving to meet Det. Ellis.

**{¶4}** Later in the day, Det. Ellis drafted an affidavit in support of a search warrant for Appellant's residence. In his affidavit, Det. Ellis cites, among other information, the following as probable cause for the warrant:

4. Confidential informant #1 was fitted with an electronic audio and video recording device and provided with prerecorded funds.

5. The confidential informants drove to 730 North Seventh Street in Steubenville, Ohio and parked their vehicle. A short time later Yetts arrived at 730 North Seventh Street driving a maroon Ford Expedition. Yetts exited the vehicle and met with both confidential informants. Both confidential informants and Yetts entered 730 North Seventh Street. Confidential informant #2 and Yetts entered the elevator and went to the second floor of the apartment building. Confidential informant #2 and Yetts exited the elevator and entered apartment 212. While inside apartment 212, Yetts sold confidential informant #2 crack cocaine in exchange for the prerecorded currency. Following the drug transaction between Yetts and confidential informant #2 both exited apartment 212 and proceeded to the first floor of the apartment building and exited the building. Both confidential informants met with detectives at a prearranged location. There confidential informant #1 provided a detective with the purchased crack cocaine.

(State's Exh. 1.)

{¶5} The trial court issued the search warrant and it was executed that same day. During the search of the apartment, the officers seized two firearms which had both been reported stolen, approximately 53 grams of cocaine, a digital scale, and a piece of mail addressed to Appellant at that residence.

{¶6} On September 13, 2017, a Jefferson County Grand Jury returned a seven count indictment against Appellant. Count 1 was for possession of cocaine, a fifth degree felony in violation of R.C. 2925.11(A) and (C)(4)(a). Count 2 was for trafficking in cocaine, a fifth degree felony in violation of R.C. 2925.03(A) and (C)(4)(a). Both counts 1 and 2

relate to the June 14th buy. Count 3 was for possession of cocaine, a fifth degree felony in violation of R.C. 2925.11(A) and (C)(4)(a). Count 4 was for trafficking in cocaine, a fifth degree felony in violation of R.C. 2925.03(A) and (C)(4)(a). Both counts 3 and 4 relate to the July 20th buy. Count 5 charged possession of cocaine in an amount that equals or exceeds 27 grams in violation R.C. 2925.11(A) and (C)(4)(e), a first degree felony. This corresponds to the cocaine seized from Appellant's apartment. Count 6 was for violating R.C. 2923.13(A)(3), having weapons while under disability as a result of a previous drug violation, a third degree felony. This was due to the two guns seized from Appellant's residence during the search. Count 7 was for receiving stolen property, a third degree felony in violation of R.C. 2913.51(A) because the seized guns were reported stolen.

{¶7} On January 19, 2018, an amended and superseding indicted was returned against Appellant which added a forfeiture specification to count 2, seeking forfeiture of Appellant's vehicle used during the June 14th buy.

{¶8} Appellant filed a motion to suppress on January 4, 2018 in which he sought to bar from trial all evidence obtained as a result of execution of the search warrant. He did not directly attack the confidential informants' veracity. Instead, he contended that the state lacked probable cause for the warrant because there was no independent corroboration of the statements made by the confidential informants in regard to the buys. A hearing on the motion was held January 16, 2018. Det. Ellis was the only witness to testify at the suppression hearing. He outlined the protocol for controlled buys and discussed to what degree that protocol was followed in making the two buys in Appellant's case. No other witnesses testified. Importantly, Appellant never requested to have the identity of the confidential informants made known, nor did he file a motion seeking to

have them testify at the suppression hearing. The trial court issued a judgment entry on January 23, 2018, overruling the motion to suppress and concluding that the search was valid.

{¶9} The matter was set for a jury trial on January 23, 2018. The day before trial was to commence, at a pretrial hearing, Appellant requested that his appointed counsel be removed and new counsel be appointed. The state objected to the request. A lengthy colloquy occurred concerning Appellant's last minute request for new counsel. Appellant stated that he did not like the way counsel was handling his case. He explained that in his view, the text records from his cell phone were necessary to support his defense. As his phone had been seized during the search, he asked counsel to retrieve the records from the telephone company. Counsel had not done as Appellant requested. (1/22/18 Tr., p. 5.) The trial court informed Appellant that new counsel would not be appointed so close to trial. Appellant then made the request to represent himself. (1/22/18 Tr., p. 9.) The trial court discussed at length the problems and issues surrounding self-representation and indicated that it was not inclined to grant Appellant's request. Ultimately, the court admonished Appellant to think about it overnight, and told Appellant that if he still wished to represent himself he would be required to sign a waiver. (1/22/18 Tr., p. 12.)

{¶10} The record reflects that the following morning, the trial court again engaged in a discussion about the dangers of self-representation. Appellant insisted on representing himself. While the trial court cautioned against it, Appellant persisted and executed a written waiver. The trial court ultimately granted Appellant's request and

ordered defense counsel to remain in the courtroom as stand-by counsel, as needed. (1/23/18 Tr., p. 9.)

{¶11} The matter proceeded to trial that day. The jury found Appellant guilty on all counts. On January 29, 2018 a sentencing hearing was held. Appellant was sentenced to one year in prison each for counts 1, 2, 3, 4 and 7. He was sentenced to a term of eight years on count 5 and three years on count 6. The sentences on counts 5 and 6 were ordered to be served consecutively. The sentences for counts 1, 2, 3, 4 and 7 were ordered to be served concurrently to the other sentences for a total stated prison term of eleven years. Appellant filed this timely appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE JURY VERDICT OF GUILTY TO ALL COUNTS OF THE INDICTMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Id.*

{¶13} When reviewing a manifest weight of the evidence argument, a reviewing court must examine the entire record, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, 389. Only in exceptional circumstances will a conviction

be reversed as against the manifest weight of the evidence. *Id.* This strict test for manifest weight acknowledges that credibility is generally the province of the factfinder who sits in the best position to accurately assess the credibility of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶14} Appellant argues his convictions are against the manifest weight of the evidence due to the state's failure to present evidence establishing all of the elements of his charged crimes. He contends the trial court erred in accepting the verdict of the jury as there was "no audio, video or photographic evidence that identified [Appellant] possessing and trafficking crack cocaine to anyone." Since the informants did not testify at trial, Appellant argues that there was no "chain of custody linkage" from Appellant to the drug task force. (Appellant's Brief, p. 7.)

{¶15} Appellant's manifest weight argument is based solely on issues surrounding the confidential informants. Appellant asserts that at trial the state failed to demonstrate a link between Appellant and the charged offenses because it failed to provide testimony from the confidential informants. Appellant urges this was necessary largely because the informants failed to capture Appellant on audio or video making a sale of drugs during one of the controlled buys. An examination of the manifest weight of the evidence requires an examination of the evidence presented at trial. *Thompkins,* at 387, 389. However, in a case such as this where Appellant challenged the validity of the search warrant by filing a motion to suppress, the issue of the use of confidential informants to procure the warrant was required to be addressed at the time Appellant sought to suppress the evidence. *State v. Truax*, 7th Dist. No. 06 BE 66, 2007-Ohio-4993, ¶ 16;

Crim.R. 12(C)(3). While the basis for procuring the warrant was the controlled buys, neither confidential informant was present at the suppression hearing. Despite the fact that Appellant was aware two confidential informants had been utilized to conduct both controlled buys, Appellant never filed a motion seeking disclosure of the informants' identity or seeking to have them present to testify at the suppression hearing.

{¶16} In Appellant's motion to suppress he argued that the search lacked probable cause because it "does not exist absent independent corroboration of the statements attributed to an unnamed 'confidential informants.' " (Motion to Suppress, p. 2.) Appellant contended that in order to ascertain whether the affidavit seeking the warrant was sufficiently supported, the trial court must rely on the veracity of the two informants. He claimed that the search warrant was not issued as "the result of information provided by the confidential informant but as a result of unsubstantiated police activity." (Motion to Suppress, p. 3.) In essence, Appellant contended that the informants had no independent knowledge of Appellant's drug activity. Instead, the police, who had been targeting Appellant for some time, had coached the informants. (Motion to Suppress, p. 4.) Hence, while Appellant's motion was based entirely on a theory that could only be proved or disproved by testimony from the informants, at no time did Appellant request their identity be disclosed or that they be brought to testify.

{¶17} A motion for court ordered relief, "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." Crim.R. 47. At a suppression hearing, the state's burden of proof "is limited to those contentions that are asserted with sufficient particularity to place the prosecutor and court on notice of the issues to be decided." *State v. Diaz,* 5th Dist. No. 2016 CA 00113, 2017-Ohio-262, ¶ 23,

citing *City of Xenia v. Wallace,* 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). Thus, the burden was on Appellant at the suppression hearing to articulate the issues to be decided, including the link between the confidential informants and the search warrant, and to take all necessary steps to support these issues with proof. Pursuant to Appellant's suppression motion, the issue to be addressed by the state and the court was whether the confidential informants actually had independent information regarding Appellant's drug activity or whether they were essentially props used by the police who obtained all of their relevant information from other, impliedly improper, police activity. (Motion to Suppress, p. 3.) In attacking the validity of the search warrant in this manner, Appellant was required to request that the identity of the confidential informants be disclosed and to cross-examine them regarding the controlled buys in order to prove or disprove his claims. No such motion seeking the disclosure of the confidential informants was ever filed. Appellant relied solely on attacking the testimony of Det. Ellis at the suppression hearing, instead.

**{¶18}** The general rule in Ohio regarding disclosure of a confidential informant's identity is "that the identity of an informant must be revealed to a criminal defendant when the testimony * * * is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams,* 4 Ohio St.3d 74, 77, 446 N.E.2d 779 (1983).

**{¶19}** This Court held in *State v. Kelley,* 179 Ohio App.3d 666, 2008-Ohio-6598, 903 N.E.2d 365 (7th Dist.2008), that the trial court did not err in failing to reveal the identity of a confidential informant because the informant's statement was not vital to establishing an element of the case and that the identity of the informant was not helpful in assisting

in preparation for trial, as the defense counsel requested the identity only after trial was to begin. *Id.* at ¶ 8. In *Kelley,* the defendant did not file a motion to suppress and did not seek the disclosure of the confidential informant until the day of trial. *Id.*

**{¶20}** At the suppression hearing in this matter, Det. Ellis testified regarding the protocol for buys, including recording the telephone call made to arrange the buy, supplying "marked" money, and having confidential informants wired to obtain audio and visual recordings. He testified that the protocol was followed for the June 14th buy and that he took photographs of the parking lot buy from across the street. (1/16/18 Tr., pp. 7-8.) He testified that he personally observed Appellant in his vehicle and selling the cocaine to the informants. (1/16/18 Tr., pp. 7-8.) At the conclusion of this buy, Det. Ellis testified that he met the informants at a separate location, who turned over the drugs purchased from Appellant.

**{¶21}** Det. Ellis also testified regarding the second buy on July 20th. He noted that initially the protocol was followed. (1/16/18 Tr., p. 10.) He admitted, however, that Confidential Informant #2, who was not wearing video or audio equipment, went up to Appellant's apartment and purchased $50 worth of cocaine. The informant who was wired did not participate in the actual buy. Det. Ellis met the informants at a separate location after the transaction concluded, where they turned over the drugs they said they purchased from Appellant. (1/16/18 Tr., p. 11.) Det. Ellis testified that based on the results of the buys, he prepared an affidavit to obtain a search warrant for Appellant's apartment. While his application seeking the search warrant was spurred by the July 20th buy, (1/16/18 Tr., p. 12), Det. Ellis testified that he

provided [the judge] information of both controlled purchases, who it was from, how the controlled purchase went down and I gave him a background on the confidential informants, that they were -- were reliable and had worked with me in the past.

(1/16/18 Tr., p. 13.)

{¶22} On cross-examination, Det. Ellis confirmed that his basis for seeking the search warrant was the July 20th buy. (1/16/18 Tr., p. 15.) He also testified that the second transaction was not recorded and that he did not maintain visual contact with the confidential informants once they entered Appellant's apartment building. (1/16/18 Tr., p. 16.) Det. Ellis testified that after the buy, he retrieved the contraband from the informants at a separate location where they informed him that Confidential Informant #2 had purchased the drugs from Appellant. (1/16/18 Tr., p. 18.) The following exchange also occurred on cross-examination:

[APPELLANT'S COUNSEL]: Well, what's the relationship between the two confidential informants?

[DET. ELLIS]: I'm sorry?

THE COURT: Go ahead. You can ask him. We're not going to get too particular to the point where it might identify somebody.

APPELLANT'S COUNSEL]: Right and I don't want that.

(1/16/18 Tr., pp. 18-19.)

{¶23} It is apparent from this exchange that Appellant's counsel did not seek to have the identity of the confidential informants disclosed and, in fact, was careful not to do so while cross-examining Det. Ellis even though the purpose of the suppression motion

Case No. 18 JE 0004

was to contest the validity of the search warrant and even though Appellant's theory was based on information only the informants could provide.

{¶24} Appellant now argues that his convictions are against the manifest weight of the evidence because the state failed at trial to provide testimony from the confidential informants and failed to present photographic evidence of the buys. Because he failed to timely raise this issue of the identity of the informants to the trial court, Appellant has forfeited the right to raise the issue on appeal. *State v. Schindler,* 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994). Appellant has waived this issue, and any argument regarding validity of the search warrant based on the information provided by Det. Ellis regarding the controlled buys is also waived. The search undertaken pursuant to the warrant yielded the drugs and firearms found in Appellant's apartment. That contraband, taken in conjunction with the controlled buys, led to the charges and subsequent convictions of Appellant.

{¶25} Appellant was charged with trafficking, a violation of R.C. 2925.03(A) and (C)(4)(a). This requires proof that Appellant knowingly sold or offered to sell a controlled substance, in this case, cocaine. Possession, in violation of R.C. 2925.11(A) and (C)(4)(a), requires proof that Appellant obtained, possessed or used a controlled substance. Again, in this case the substance was cocaine in an amount over 27 grams, a first degree felony. Having weapons while under disability in violation of R.C. 2923.13, requires proof that Appellant acquired, had, carried or used any firearm or dangerous ordnance after conviction on a prior felony drug offense. Finally, Appellant was charged with receiving stolen property, a violation of R.C. 2913.51(A). This required the state to

prove that Appellant received, retained or disposed of the property of another while knowing or having reasonable cause to believe that the property was stolen.

**{¶26}** At trial, the state presented the testimony of Det. Ellis and of Detective Christopher Vinci, another drug task force detective who assisted in executing the search warrant. Det. Ellis testified about the manner in which the controlled buys were conducted and the details of how the June 14th and July 20th buys occurred. He testified that after the completion of both buys, drugs were recovered from the informants, who said they purchased the drugs from Appellant. A search warrant was obtained which led to the seizure of additional drugs and firearms from Appellant's residence. Det. Ellis also testified that the substance seized from Appellant's apartment tested positive for cocaine in a field test and that BCI confirmed, after additional testing, that the substance was cocaine.

**{¶27}** The tapes of the phone calls setting up the buys and the videos from the confidential informants of the two buys were played for the jury. As noted above, the videos do not reveal the details of the transactions, so Det. Ellis testified about what was occurring throughout the tapes, including when the informants arrived at the location, how the building was identified as Appellant's residence, and the manner in which Appellant's vehicle was identified.

**{¶28}** Det. Vinci testified about the execution of the search warrant and described where the firearms were found. (1/23/18 Tr., p. 114.) He testified that a check on the firearms was run through a national database. This revealed that both firearms had been reported stolen. The state offered the reports about the firearms into evidence.

{¶29} The testimony of the two detectives regarding the controlled buys, the recording of the telephone calls and videos, and the drugs and firearms seized from Appellant's apartment all support the conclusion that Appellant possessed and was trafficking in cocaine and that he had stolen firearms in his possession. A copy of Appellant's prior felony convictions was also presented, which supports his possession of firearms while under a disability.

{¶30} Based upon the evidence in the record, each element of each offense was proven at trial. We cannot conclude that Appellant's convictions were against the manifest weight of the evidence. Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SENTENCING THE DEFENDANT TO ELEVEN (11) YEARS IN PRISON.

{¶31} In his second assignment of error, Appellant contends the trial court erred in sentencing him to eleven years in prison. Pursuant to *State v. Marcum,* 146 Ohio St.3d 516, an appellate court is permitted to review a felony sentence to determine if it is contrary to law. Further, "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Id.*

{¶32} At the sentencing hearing on January 29, 2018, the trial court stated that it considered the principles and purposes of sentencing set forth in R.C. 2929.11, including the purpose of protecting the public from future crime by the offender and of punishing the offender. The trial court also stated it considered factors regarding the seriousness

of the offense and the likelihood of recidivism pursuant to R.C. 2929.12(B), (C), (D) and (E). The court noted that Appellant was subject to a mandatory prison term for the first degree felony.

**{¶33}** The court merged counts 1 and 2 and counts 3 and 4 for sentencing purposes. Counts 6 and 7 also merged for sentencing as they were related to the firearms recovered.

**{¶34}** Regarding consecutive sentencing, the trial court noted both at the sentencing hearing and in the judgment entry of sentence that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct, addressed the danger Appellant poses to the public, and that the court sought to protect the public from future crime. (1/29/18 Tr., p. 11.); (2/5/18 J.E.).

**{¶35}** According to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if the court makes three statutory findings:

[T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

Case No. 18 JE 0004

(b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)    The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶36}** Although the trial court initially indicated at the sentencing hearing that consecutive sentencing findings were not necessary because "that only kicks in when you exceed the maximum term of the biggest offense which we've not done," and noted "[y]ou're probably the nicest guy I ever sent to prison but you keep doing bad things," the court ultimately sentenced Appellant to consecutive sentences.  (1/29/18 Tr., p. 11.) While the trial court did not mention R.C. 2929.14(C) specifically at the hearing, the court found that Appellant had a prior criminal history, that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct, and that Appellant posed a danger to the public and consecutive sentences were necessary to protect the public from future crime.  (1/29/18 Tr., p. 11.)  Taken as a whole, this record shows that the court made the necessary findings even though not using the direct statutory language, at the hearing.   The trial court must make the requisite findings regarding consecutive sentencing at the sentencing hearing and incorporate those findings into the sentencing entry. *State v. Williams,* 7th Dist. No. 13 MA 125, 2015-Ohio-4100, 43 N.E.3d 797, ¶ 33-34, citing *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

The trial court here already made the required consecutive sentencing findings in the written judgment entry, also.

**{¶37}** Appellant's second assignment of error lacks merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE STATE TO PRESENT THE DEFENDANT'S PLEA OFFER LETTER TO THE JURY.

**{¶38}** In his third assignment of error Appellant contends the trial court erred in allowing the state to present to the jury the letter he wrote concerning a plea. Pursuant to Evid.R. 410, any statements made in the course of plea discussions should not be admissible. The Ohio Supreme Court has held that in order to seek protection under Evid.R. 410, a defendant is required to have a subjective expectation at the time the statements were made that a plea was being negotiated. *State v. Frazier,* 73 Ohio St.3d 323, 652 N.E.2d 1000 (1995), syllabus. That expectation is required to be "reasonable under the circumstances." *Id.* Evid.R. 410 is not implicated when the disputed statements were provided to the state by the accused or his attorney. *State v. Jeffries*, 119 Ohio St.3d 265, 2008-Ohio-3865, 893 N.E.2d 487, ¶ 9.

**{¶39}** As noted by the state, Evid.R. 410 does not provide protection where, as here, Appellant drafted a letter to a prosecutor who was not assigned to his case, and offered his own plea deal when no plea negotiations were being undertaken. The state also noted that there was no response offered to Appellant's letter because there were no ongoing plea negotiations. Appellant testified at trial that he did not draft the letter in question and that he did not tell the drafter what to write, but that he had signed the letter.

(1/23/18, Tr., p. 158.) This record reflects that Appellant could not have possessed a reasonable subjective expectation that a plea was being negotiated in this matter. Hence, his letter offering to accept a plea was not subject to protection from being used as evidence against him.

**{¶40}** Appellant's third assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO APPOINT TRIAL COUNSEL FOR THE DEFENDANT.

**{¶41}** In his fourth assignment of error, Appellant contends the trial court erred in refusing to appoint new trial counsel. Appellant had been represented by counsel throughout the proceedings until the day before trial when he requested new counsel.

**{¶42}** An indigent defendant's right to counsel does not extend to an ability to select the counsel of defendant's choice and does not require that the appointed counsel develop "a meaningful relationship" with the defendant. *State v. Blankenship,* 102 Ohio App.3d 534, 558, 657 N.E.2d 559 (12th Dist.1995). Relevant grounds for determining when new counsel should be appointed exist only after "a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *Id.*, citing *State v. Pruitt*, 18 Ohio App.3d 50, 57, 480 N.E.2d 499 (1984). The defendant bears the burden to demonstrate that new counsel is required. If the defendant alleges facts which, if true, would require relief and the appointment of new counsel, the trial court must inquire into the defendant's complaint and make that inquiry part of the record. *State v. Deal,* 17 Ohio St.2d 17, 20, 244 N.E.2d 742 (1969).

Case No. 18 JE 0004

{¶43} In the instant matter, the transcripts of the proceedings both on the day before trial was set to commence and the morning of trial contain extensive dialogue between Appellant and the trial court regarding Appellant's request for new counsel or to self-represent. Appellant first contended that he needed new counsel because he sought to obtain text records from his phone and had communicated that request to counsel to no avail. Defense counsel denied that he and Appellant had any disagreement that would impact representation. Appellant subsequently demurred and indicated that while he did not have any real issue with counsel's representation of him, he simply wanted new counsel. Appellant ultimately stated: "I have everything right here" to move forward, and requested that he be allowed to represent himself. (1/22/18 Tr., p. 11.)

{¶44} The trial court had the duty to inquire on the record as to Appellant's concerns. Vague or general objections do not trigger a duty to investigate further. *Deal*, at 19. This record reveals the trial court inquired as to Appellant's decision to seek new counsel and a lengthy discussion was had on the record as to exactly why Appellant thought he needed new counsel. Appellant's stated concern about his telephone records was quickly dispensed with and Appellant admitted he simply desired new counsel or, in the alternative, he desired to represent himself. Such vague assertions one day before trial do not trigger the kind of concerns regarding representation set forth in *Pruitt, supra.* The decision to appoint new trial counsel rests within the sound discretion of the trial judge. *State v. Dukes,* 34 Ohio App.3d 263, 265, 518 N.E.2d 28 (8th Dist.1986). The facts in the instant case indicate the trial court properly inquired into Appellant's last minute request for new counsel. Appellant did not adequately demonstrate why new

counsel should be appointed. We conclude the trial court did not abuse its discretion in failing to appoint new trial counsel one day prior to trial.

{¶45} While Appellant does not raise error in the trial court granting his request to represent himself, this record does not reflect error in this regard. Once the trial court made it clear that no new counsel would be appointed on the eve of trial, Appellant then demanded his right to self-representation. The trial court fully apprised Appellant of the pitfalls involved in such an endeavor and engaged in a dialogue to determine whether Appellant fully understood what he was undertaking. Appellant was allowed a day to reflect and consider. The trial court's decision to grant Appellant's request is supported in the record, here.

{¶46} Appellant's fourth assignment of error is without merit and is overruled.

### Conclusion

{¶47} Based on the foregoing, Appellant's first assignment of error contending his convictions were against the manifest weight of the evidence is without merit, as the state presented evidence that, if believed, supports his convictions. Appellant's second assignment of error regarding sentencing lacks merit, as the record demonstrates the trial court conducted an analysis of the factors relative to consecutive sentencing at the sentencing hearing and in the judgment entry of sentence. Appellant's third assignment of error regarding the admission of his letter into evidence is without merit because the letter did not run contrary to the prohibition found in Evid.R. 410. There were no ongoing plea negotiations and it was not reasonable under the circumstances for Appellant to believe a plea negotiation was occurring. Appellant's fourth assignment of error regarding the trial court's failure to appoint new counsel one day prior to trial is without merit, as a

review of the record reflects the trial court inquired extensively into Appellant's request for new counsel and found no conflict existed which would warrant new counsel one day prior to trial. Appellant's convictions are upheld and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**